# VADNER v. ROZZELLE.

No. 5518.   Decided May 23, 1935.   (45 P. [2d] 561.)

*E. A. Walton* and *Parley P. Jenson,* both of Salt Lake City, for appellant.

*Clarence M. Beck* and *Homer Holmgren,* both of Salt Lake City, and *Howard D. Hanson,* of Los Angeles, Cal., for respondent.

FOLLAND, Justice.

Plaintiff, as assignee of four choses in action, brought this action to recover for damages by fire alleged to have been negligently caused by defendant. Plaintiff's assignors are three insurance companies who paid the fire loss and took subrogation agreements or assignments which were by the companies' adjusters assigned to plaintiff, and one

alleged owner of property who assigned directly to plaintiff. All the losses occurred in the same fire. The cause was tried to the court without a jury. From a judgment for plaintiff on all causes of action the defendants appeal. The assigned errors may be grouped into four classes: (1) The finding of negligence on the part of defendant is not sustained by the evidence; (2) failure of proof of title to the property covered in the first cause of action; (3) want of authority in the adjusters to assign the subrogation contracts; and (4) no competent proof of damages to the Buick car in the third cause of action.

This is a law action, and as to the question of negligence the finding of the trial court must be sustained if there is any substantial competent evidence which supports it. The negligence alleged is that defendant carelessly and negligently allowed gasoline to spill and slop on the floor of the Fowler Body & Metal Works while delivering gasoline into a portable tank known as a "gasoline buggy," so that the volatile vapors, gasses, and fumes thereof came in contact with the fire in a heating stove located in close proximity resulting in an explosion and fire. Neslen and Ray, who were the lessees of the Fowler machine shop or garage, had ordered from defendant gasoline to fill the gasoline buggy. The delivery was made on a January day in 1932. The weather was cold and the shop was closed, but the doors were opened to permit the defendant's employee to drive a gasoline truck into the garage. The driver first went into the office and delivered an invoice for gasoline previously received. The office was a small room about 16x16 feet in the corner of the machine shop or garage where cars were repaired and serviced. There was no heating stove in the shop, but there was one with a fire burning therein in the office. Defendant's employee then went into the garage to deliver the gasoline to the gasoline buggy. He drew gasoline from the tank on the truck into a 10-gallon bucket and poured from the bucket into the buggy through a funnel. He testified he had been told the buggy was empty

and to fill it. The capacity of the buggy was 50 gallons. While the fifth bucket was being poured into the funnel, the gasoline overflowed and some of it ran onto the floor of the garage. Defendant's employee ceased to pour from the bucket into the funnel, and Mr. Ray, one of the lessees who was near, reached for the funnel and pulled it out, but, before he could cap his hand under the end of the funnel to stop the flow or direct it into the bucket, he slipped. The funnel dropped and more gasoline spilled over the floor. Mr. Ray said he saw a flash of light come from the office where the stove was situated, and the gasoline burst into flame, causing the fire losses sued for in this action. There was no other open fire or flame or other apparent cause for the ignition of the gasoline except the fire in the stove located in the office. It is objected that there is no evidence that gasoline 15 or 16 feet away from the stove would give off vapors that would travel such distance and come in contact with the fire, and that the court cannot take judicial notice of such fact; that the evidence does not support the finding that defendant's driver was negligent in not preventing the spilling of the gasoline.

As already indicated, the finding cannot be reversed if there is any substantial evidence to support it. We think there is evidence from which negligence may be found. The defendant was engaged in the business of selling and delivering gasoline. The truck was driven by his employee, who poured gasoline into the gasoline buggy. The fire undoubtedly occurred because of the slopping over of the gasoline by defendant's employee pouring it into the funnel after it had become filled. There was an immediate overflow onto the floor. Ray attempted to reduce the amount of overflow, but, by reason of accidentally slipping, failed so to do. It was for the court to say whether the manner of pouring the gasoline under the circumstances resulting in an overflow was negligence on the part of the employee. That vapors from the gasoline came in contact with the fire in the stove does not rest alone on inference nor

require the court to depend upon judicial knowledge that gasoline is volatile, for the reason that there is direct testimony by Mr. Ray that he saw something "like a big red smoke or red fire in the office and up in the center of the office and it came right to the floor, right on out through the office door, run on out there and lit this wet gas, and that is all there was to it, and it was all off." Defendant is charged with the knowledge that gasoline is highly volatile and will give off fumes or gases that will ignite readily when in proximity to a fire or flame. These facts are so generally known that in some instances courts have taken judicial knowledge of them. *Wingfield* v. *Moberly Oil Co.* (Mo. App.) 269 S. W. 644; *Palacine Oil Co.* v. *Philpot*, 144 Okl. 123, 289 P. 281; *Ormsby* v. *A. B. C. Fireproof Warehouse Co.*, 214 Mo. App. 336, 253 S. W. 491; *McLawson* v. *Paragon Refining Co.*, 198 Mich. 222, 164 N. W. 668. The finding of negligence is supported by sufficient competent evidence and may not be disturbed by us on this appeal.

The first cause of action was for the destruction of the Neon electric sign. The chose in action was alleged to have been assigned to plaintiff by the National Service Corporation. Appellant contends plaintiff failed to prove title in that corporation, and hence none in plaintiff as assignee. The assistant manager of the National Service Corporation, Mr. B. R. Parkinson, testified that the company was owner of the sign and that it had assigned to plaintiff its right to recover for the damage done to the sign by the fire. The evidence discloses that Neon Display, Inc., built and owned the sign, but leased it to J. P. Fowler, operating as Fowler Garage. On cross-examination of Mr. Parkinson the lease and assignment were called for and introduced in evidence. These show an assignment to the National Service Corporation of the agreement of lease from the Neon Displays, Inc., to J. P. Fowler, but no bill of sale or other conveyance of the property. The witness testified, over objection, to a conversation with the general manager of Neon Displays, Inc., previous to the time of the discount-

ing of any of its paper. This conversation was to the effect that "we would aid Mr. Peterson (General Manager of Neon Displays, Inc.,) in financing him by advancing money on contracts which he brought to us, and he would in turn sell to us all the interest and title rights under these contracts and to the property covered." Appellant objected to the introduction of the parol evidence as incompetent because any oral previous conversation would be merged in the writing, and further that, if the testimony be admitted, it did not show a conveyance of title. We shall discuss the last point only and assume, for the purposes of the case, the conversation was properly admitted. The testimony of Parkinson indicates he had in mind at all times that the transaction between the parties was the same as is usual with financing of automobile contracts; that is, a contract of conditional sale with title reserved in vendor and assignment by vendor of the contract to the finance company. Here, however, there was no such contract. The Neon Displays, Inc., merely leased the sign to J. P. Fowler for a term of three years at a monthly rental and assigned the lease contract to the National Service Corporation. The oral evidence explained the original intention of the parties, but does not make of the assignment something more or other than it is by its terms. It is merely an assignment of the rents due under the contract of lease. Title to the sign remained in the Neon Displays, Inc. The judgment for the value of the sign on the first cause of action cannot be sustained, because there is no assignment from the owner to the plaintiff of the right to sue for the value of the sign.

It is urged there is no competent proof of damage to the Buick sedan involved in the second cause of action. The testimony of the mechanic as to his estimate of damages, although in language of a past estimate, carries the inference that this was his present opinion. The objection is without merit.

Separate insurance companies had insured the fixtures and equipment of J. P. Fowler involved in the second cause

of action, the Buick car of Laura McCurdy involved in the third, and the building of George Klenke involved in the fourth. In each instance the insurance carrier paid the loss and took an assignment or subrogation contract from the insured. These contracts were in turn assigned to the plaintiff by the insurance adjuster as agent of the different insurance companies. Mr. Lester Parker, an independent adjuster, assigned the subrogation contracts in the second and fourth causes of action. Mr. Burt Merrill, a regularly employed adjuster and agent of the insurance carrier, assigned the contract in the third cause of action. Since the transactions are somewhat similar, we shall speak only of the Parker assignments. The fact of the agency of Parker for the insurance carrier is not questioned, but merely his authority to assign the claims in suit to the plaintiff, his assistant. The losses in each instance were adjusted and paid. Subrogation contracts were taken by the adjuster from the insured to the insurance company paying the loss, and these were by him assigned in the name of the insurance companies, respectively, to plaintiff. The question before us is whether the assignment of the subrogation contracts was within the scope of authority of the adjuster. The objection was also made that Parker's testimony involved a conclusion rather than the recital of any communication.

The authority of the agent is a question of fact to be found from all the evidence on that subject in the record. Parker was asked the following question and over objection answered as follows:

"Q. I wish you would state just briefly what your duties are as adjuster with the insurance companies, these two insurance companies, mentioned in the last two introduced exhibits? A. My duties as an adjuster include the investigation of the cause of the accident or fire; the examination of the owner and various witnesses who may know something about the case; the appraisal of the damages; the determination as to whether or not there might be a third party responsible for the accident; to do all things in full to bring about a recovery under the subrogation rights of the insurance companies,

including the expedient of assignment to a third party on behalf of the company; the following through of the matter to a definite conclusion, affording all assistance in my power."

The witness also testified, over objection, that the custom and practice with respect to an independent adjuster adjusting claims arising out of fire losses was that "when the matter reaches the stage of claim under subrogation rights it would be customary to do any and all things 7, 8 necessary to further that matter including the assignment of the company's claim to a third party." An insurance adjuster is ordinarily a special agent for the company for whom he acts, and his authority is prima facie coextensive with the business intrusted to him, which usually is limited to ascertainment and adjustment of the loss. 26 C. J. 413; 2 Couch, Cyc. of Insur. Law, 1466. Within the apparent scope of his authority an adjuster may bind the principal where the third party knows of no limitation of such authority. *Western Loggers' Machinery Co.* v. *National Union Fire Ins. Co.*, 136 Or. 549, 299 P. 311.

"If a person acts openly and notoriously in exercising the duties of a particular agency, and under such circumstances as imply knowledge of the company, the presumption attaches that he has the authority he thus claims to possess, for it is immaterial, so far as an agent's dealings with third persons are concerned, whether he acts by the direction and request of the principal, or by his permission merely, as he is equally an agent in both cases." 2 Couch, Cyc. of Insur. Law, 1477.

That Parker was the authorized adjuster for the insurance companies employing him is proved and in fact conceded, and the evidence discloses that he did all the things described in his testimony, including the assignment of the claim. That it was within the scope of his authority to assign the claims depends largely on his own testimony. It is a general rule that the testimony of an agent is admissible and competent to prove the nature and scope of his authority. 2 C. J. 935; *Kast* v. *Miller & Lux*,

159 Cal. 723, 115 P. 932; *Handley* v. *Johnson,* 104 Cal. App. 606, 286 P. 428; *Concordia Fire Ins. Co.* v. *Mitchell,* 122 Ark. 357, 183 S. W. 770; *Jones* v. *Carolina Power & Light Co.,* 206 N. C. 862, 175 S. E. 167. The point of the objection, however, was that the question called for a "conclusion and not for any communication." The case of *Handley* v. *Johnson,* supra, is almost exactly in point, except the decision does not disclose that objection was made to the testimony on the ground that it was a conclusion. There the agent testified, similarly as the adjuster testified here, that it was his duty to adjust losses and settle cases, in the course of which he made assignments of claims in behalf of the company. The evidence was there held admissible under the rule that the testimony of an agent is competent and admissible to prove the nature and scope of his authority. It is difficult to see how the testimony could be better stated than it was by the witness Parker under the circumstances of this case. The scope of the adjuster's authority did not depend on specific instructions from the companies at the time of employment. The witness was an independent adjuster conducting his own business and open to employment by any insurance company desiring his services. The scope of his authority and the range of his duties depend on what is customarily done by such an adjuster rather than the specific instruction at the time of employment. His employment here resulted from a communication from the company advising him of the fire and requesting that he proceed with the adjustment. No specific orders were given and no limitations on his authority were indicated. It would follow, therefore, that his employment was to do all things customarily done by an adjuster under the circumstances. It is comparable to the services of a lawyer or other independent professional man who is employed generally and without limitation to undertake a piece of work within the scope of his ordinary duty. This is illustrated in *Kast* v. *Miller & Lux,* supra, where the witness testified that:

"As attorney my duties were to take such measures as I deemed expedient for the purpose of legitimately assuming the prosecution of the case."

The issue there was whether the employment of a detective by an attorney was within the scope of his authority so as to bind his client for payment of the services. The court admitted the evidence. It would seem natural to suppose that the definition of an adjusters' duty as given by that witness was an accurate one, since it merely embraces the range of activity incident to a full adjustment of the claim, from an appraisal of the loss to and including final settlement with a third party who might be liable for the loss. We conclude no error was committed in admitting the evidence objected to by appellant.

Two telegrams were offered and admitted in evidence purporting to be from the Union Fire Insurance Company and Selbach & Deans representing the American Insurance Company, and purporting to ratify the action of Parker in assigning the respective subrogation interests of such companies. We refrain from passing on the question of admissibility and effect of these telegrams, for the reason that the evidence is sufficient without them to sustain the finding of the trial court with respect to the assignment of the claims. In view of the results reached, the other questions argued need not be discussed.

The judgment on the first cause of action is reversed, and the cause remanded to the district court of Salt Lake county for a new trial. The judgments on the second, third, and fourth causes of action are affirmed, each party to bear his own costs on appeal.

ELIAS HANSEN, C. J., EPHRAIM HANSON and MOFFAT, JJ., and MELVIN C. HARRIS, District Judge, concur.

WOLFE, J., being disqualified, did not participate herein.