358 P.2d 85

Robert J. ERISMAN and Darlyne L. Erisman, his wife, Plaintiffs and Appellants,

v.

Marr B. OVERMAN, Defendant and Respondent.

No. 9226.

Supreme Court of Utah.

Jan. 6, 1961.

Sherma Hansen, Brigham City, for appellants.

Daines & Daines, Logan, for respondent.

HENRIOD, Justice.

Appeal from a judgment in favor of defendant on her counterclaim in a suit in which plaintiffs sued for amounts due under a contract of sale of real estate, claiming also attorney's fees and treble damages for unlawful detainer. Reversed, with costs to plaintiffs.

On August 25, 1956, plaintiffs listed a house and lot for sale with Utah Mortgage Loan Company, for which company defendant worked, the listing card indicating the property was connected with the Logan City sewer. Plaintiffs thought it was when they purchased the property from their predecessors. Defendant relied on this information on the card, but an Earnest Money agreement signed by her on March 16, 1957, did not contain any such information or representation in a box provided therefor. On March 20, 1957, the parties signed an Escrow Agreement, plaintiffs agreeing to sell and defendant to buy the property for $6,100 payable $500 down and $50.74 per month. Payments, including the August, 1958, payment, were made mostly on time but occasionally late. After August, 1958, defendant made no payments whatever.

The following chronology of events took place before and after failure of defendant to make payments. On July 18, 1958, defendant wrote to plaintiffs who were then residents of Ohio, stating that she desired to make some home improvements and would like to refinance the contract by way of a first and a second mortgage arrangement. On August 12, 1958, plaintiffs answered, stating they would be agreeable. On August 30, 1958, defendant responded and advised that the property was not connected to the city sewer as represented, and that the cost of accomplishing the same would be $290. She added that "I am going ahead with the connection * * * but I am wondering just what consideration you will allow me," and that "I do feel that you have some responsibility regarding the sewer connection." On September 8, 1958, plaintiffs replied saying that they thought the sewer was connected, but in view of the fact it was not, they would allow $100 credit on the contract for such installation, also stating that they wanted to check on the second mortgage situation in Utah before finally deciding to accept the refinancing proposal. On September 19, 1958, defendant replied saying she was sorry plaintiffs did not want to accept the proposal, that she had consulted an attorney and had been "advised that because the

valuation of the property was based on the listing * * * showing the home was connected with the sewer, the cost of such connection should be all yours" and that *"Now because you will not permit the refinancing,—the payments I would have made * * * for August and September must be made toward the sewer connection * * *. Please write the First Security Bank before the 1st of October, advising the bank to credit the August and September payments as part of ycur expense for the connection of the sewer and tell the bank just how you wish to credit the balance of the sewer cost."* On December 3, 1958, plaintiffs' attorney wrote the defendant saying that perhaps the plaintiffs already had informed her that they did not want to have the contract refinanced, and made another offer of $100 to be applied to the cost of the sewer connection. Two months later, on February 5, 1959, defendant replied to the attorney's letter, stating that she had made $1,300 in repairs because plaintiffs had indicated they would agree to the refinancing. She added that "In the past months I have tried desperately to secure * * * financing for the amount of the repairs in order to reduce the monthly payments but have been unsuccessful. *The only alternative is to sell the home.* I have asked our real estate department to sell it. Mr. Erisman is responsible for the full cost of the sewer installation * *. *This month I will start reducing the bal-*

*ance due on the contract by monthly payments but the home is to be sold as soon as possible.* Incidentally, I have increased the valuation of the home immensely since last summer and *I will not sell without getting out from under the whole debt."*

Up to this point defendant made no gesture whatever indicating that she intended to rescind or try to rescind the contract. The above exchange of correspondence indicates that at all times theretofore she recognized and intended to rely on the terms of the contract. However, although she had stated she would start making monthly payments thereon, she failed thereafter to do so. On March 12, 1959, plaintiffs served on the bank a notice declaring the Escrow Agreement null and void, and a notice on defendant declaring the contract forfeited under its terms for failure of defendant to comply with the terms thereof. Defendant did not deliver up possession, made no payments or offer of payment on the contract and still indulged no gesture indicating any intention to rescind the contract for misrepresentation as to the sewer connection.

On May 22, more than two months later, plaintiffs filed suit to collect the payments due under the contract, and claimed an unlawful detainer, praying treble damages, costs and attorney's fees.

On June 15, 1959, some ten months after defendant had made no payments on the

contract, and for the first time, she claimed a right to rescind the contract in a counterclaim filed by her. The court went along with her theory and allowed her to recover the value for improvements she voluntarily had made both before and after she had discovered the fact that the house was not connected to the sewer, setting off against the cost thereof a stipulated $50 per month rental value during her occupancy, adjudging her to be entitled to some $614 and interest after balancing the figures.

 It appears to us that defendant had no right to rescind the subject agreement, for several reasons:

1. At no time during a 10-month period did she pay or tender payment of the monthly amounts due and owing, except as a set-off for the cost of connection to the sewer, nor did she even suggest that she intended to rescind the contract for misrepresentation. To justify a rescission under circumstances such as exist in this case, the defendant who claimed a right to rescind for misrepresentation must have notified the plaintiffs of the intention to rescind upon discovery of facts which might be considered as justifying such rescission. This was in August, 1958. Everything defendant did after that date was completely inconsistent with any right or intention to rescind and such right was not asserted until her counterclaim in June, 1959. This was too late in equity, and it cannot be said

that because defendant kept relying on the contract terms that she was negotiating a settlement and did not need to express any intention to rescind until a counterclaim was filed preceded by notice to vacate, and filing suit, all of which predated the counterclaim by three months, and by 10 months after knowledge of the fact the property was not connected with the sewer.

2. At no time did the defendant offer to place the parties in status quo, an essential to rescission, by offering to be charged with and credit plaintiffs with a reasonable rental value for the time during which she occupied the premises.

3. Perhaps the best reason for equity to deny relief in a case like this is the fact that on a $6,100 contract, only fact that would justify rescission was an expenditure of a maximum of $290. One may not invoke the powers of a court of equity on such a comparatively insignificant sum, under the maxim that "Equity will not pick up pins." If there is a legal remedy available to which resort may be had without any substantial or irreparable damage, one may not seek equity. It is apparent that, with plaintiffs' admission that they thought the property was connected with the sewer, ignoring the fact that there was nothing in the contract assuring its connection, the best that defendant could assert would be a legal claim to damages not exceeding $290,

or to an equitable set-off against the contract in a sum not to exceed $290.[1]

It seems inescapable that plaintiffs had a legitimate claim for the delinquent payments, and equally inescapable that this is not a case for equity based on a $290 repair bill arising out of a $6,100 contract.

As to the claim for treble damages under an unlawful detainer theory, plaintiffs gave notice of forfeiture of the contract only and did not give defendant an alternative to pay up or quit as is required under Title 78–36–3, Utah Code Annotated 1953.

As to any claim for attorney's fees, there is nothing in the contract requiring either side to pay attorney's fees in case of default by the other, unless it could be said that a promise existed in the contract to pay any damage suffered by default on the part of defendant. Generally it is held attorney's fees are not included in such damages, one of the reasons assigned for such rule being that to allow such fees to a plaintiff in such actions, where not allowed to a successful defendant, would give the plaintiff an unfair advantage.[2]

As to any claim for improvements made voluntarily by the defendant, there is nothing in this case that would justify any claim therefor in law or equity since they were made under circumstances that would not bind plaintiffs by any equitable doctrine of estoppel or the like, or under any legal or statutory interdiction.[3]

It appears that this case must be remanded with instructions to enter judgment in favor of plaintiffs for the monthly payments during defendant's occupancy after she stopped making payments, with an offset of $290 which appears under the evidence to be a reasonable and legitimate claim against plaintiffs for sewer connection as was contended in defendant's counterclaim.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.

---

1. The principles enunciated are generally treated in 9 Am.Jur. 388 et seq.

2. 15 Am.Jur. 550, Sec. 142, Damages.
3. 42 C.J.S. Improvements § 5 et seq., p. 427.