Rollo F. PETERSON, Plaintiff and
Respondent,

v.

Victor P. HENDRICKS, an Individual, et al.,
Defendants and Appellants.

No. 13546.

Supreme Court of Utah.

July 1, 1974.

Dwight L. King, Salt Lake City, for defendants-appellants.

Lorin N. Pace, Salt Lake City, for plaintiff-respondent.

TUCKETT, Justice:

Defendants appeal from a judgment of the district court awarding to the plaintiff a money judgment, 1,000 shares of stock in the Deer Trail Development Corporation and an interest in certain mining claims.

The defendant Victor P. Hendricks, a resident of the state of California acquired an interest in certain mining claims in Piute County, Utah. The plaintiff Rollo F. Peterson is a resident of Marysvale, Piute County, and is an experienced miner and mining operator. The plaintiff's claim against the defendants stems from a contract which the plaintiff claims he entered into with the defendant Victor P. Hendricks wherein the parties entered into to a joint venture designed to discover and to produce ore of commercial quality.

The defendant Victor P. Hendricks became interested in the mining claims upon a tale he had heard some years before of a miner who had worked the property and had covered up and hidden a vein of ore he had discovered. The contract under which the plaintiff claimed was in part based upon conversations between the parties when they were together and other conversations in the presence of third parties, and also certain writings in the form of letters.

The trial court found that during the month of May, 1966, the defendant, Victor P. Hendricks, entered into a contract with the plaintiff which provided that in exchange for the plaintiff's working the claims and for supervising exploratory work to be done in developing the claims the Hendricks would grant and convey to the plaintiff an undivided one-half interest in the group of claims. The trial court found that in reliance upon the agreement the plaintiff supervised construction of a road; that he supervised and assisted in clearing certain underground workings which were located on the claims. The court further found that the plaintiff re-

paired the ladders in the manways connecting the tunnels and that he also assisted in taking ore samples from various parts of the mine. The plaintiff also furnished tools and equipment in pursuing the mining operation.

There was an exchange of letters between the parties which tended to show that the parties contemplated that each would have an equal interest in the claims and the proceeds of any ore extracted therefrom. While these letters do not precisely set forth the terms of an agreement nor do they describe the claims, nevertheless, it was the opinion of the trial court that they constituted a sufficient memorandum of the agreement to meet the requirements of the Statute of Frauds, Sections 25–5–3 and 25–5–4, Utah Code Annotated 1953, as amended. A portion of one of the letters is in the following language:

I think we should go ahead as fast as possible on a government loan, however, if Slim gets the necessary money to reach our objective . . . .

. . . Then if we hit and form a company. If there is only two of us then you shall have a half interest and myself a half interest . . . .. We don't have anything yet going in order to form a company, and I know I trust you and you trust me, but keep this letter as a legal paper because this is written down in my handwriting and everyone wants something written down spelling out their interest. Once we can really start mining I think it will make us well off and it might make us rich. Until then, we will have to keep plugging away.

In addition to the letters the trial court considered and evaluated testimony of the parties and others as to the existence of a contract, its terms and provisions and a partial performance thereof.[1]

We conclude that the trial court was correct in its decision that there was a contract entered into between the plaintiff and Hendricks which entitled the plaintiff to a one-half interest in the claims in question and that he was entitled to recover one-half of the selling price together with one-half of the shares of stock transferred to the defendant as a part of the transaction and also one-half of retained interest.

Decision of the court below is affirmed. Respondent is entitled to costs.

CALLISTER, C. J., and CROCKETT, J., concur.

HENRIOD, Justice (concurring).

I concur, not only on the grounds which at least had merit for the trial court's decision, but for the reason that the facts in this case seem to have created a simple, enforceable grub stake agreement, unaffected by the statute of frauds.[1]

ELLETT, Justice (dissenting).

It seems to me that this is an appeal from a judgment for specific performance of a contract which never was.

Hendricks owned some mining claims in which both he and Peterson believed there was an exceedingly rich body of ore which in times past had been discovered and for reasons best known to the miner who exposed it kept secret and covered over with waste material.

The secret was well kept and the parties hereto were anxious to rediscover the "Glory Hole" as the ore body was called, and to prevent anybody else from finding out about its existence. They hoped to obtain a government loan, and failing that, to get another person with finances to become interested in the venture.

There is no written evidence of any transfer, or promise to transfer, the mining claims or any part thereof to Peterson. Hendricks owned the claims and Peterson had the mining experience necessary to locate the Glory Hole and to extract the ore therefrom.

The record reveals an intention on the part of both men to form a company to extract the ore and to share the profits. In fact, the letter which is partially quoted

1. Ravarino v. Price, 123 Utah 559, 260 P. 2d 570; Guinand v. Walton, 22 Utah 2d 196, 450 P.2d 467.

1. Morrison's Mining Rights, 16th Ed., 381 et seq.

in the prevailing opinion clearly shows this to be a fact when the sentence in the first paragraph is completed. It reads:

> I think we should go ahead as fast as possible on a government loan, however, if Slim gets the necessary money to reach our objective and wants a piece of our mining Co. that will be fine with me.

The second paragraph is sufficiently quoted in the prevailing opinion and need not be copied here.

The trial court thought this letter was sufficient to satisfy the statute of frauds which provides:

> . . . No estate or interest in real property, . . . shall be created, granted, assigned, surrendered or declared otherwise than by . . . deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, . . . . [Sec. 25–5–1, U.C.A.1953.]

One looks in vain in this letter or other writings by Hendricks for any mention of the mining claims or of any indication that Peterson was to have an interest in the land. It is clear, however, that if the company was formed to operate the claims, Peterson was to have a share in the company equal to that of Hendricks.

No company was ever formed; no loan ever obtained; and no third party with money was ever induced to join the proposed mining company.

Peterson furnished some labor and Hendricks furnished the money for expenses and for such help as Peterson hired in doing assessment work, etc.

When the Glory Hole was not rediscovered, Peterson lost his enthusiasm and ceased to do anything further. He sat by while Hendricks spent some $40,000 (obtained from his relatives) in trying to find the ore body. Then when a mining company offered to buy the claims, Peterson himself offered to buy them.[1] The offer was to buy the entire fee—not just the 50% which he now claims was all Hendricks owned.

Specific performance can only be granted when the agreement is clear and unambiguous.[2]

I would reverse the judgment and award costs to the appellant.

---

1. In his testimony he was not certain whether it was he or an associate in his presence who offered to purchase them from Hendricks.

2. Pitcher v. Lauritzen, 18 Utah 2d 368, 423 P.2d 491 (1967).