Julie JENKINS, Plaintiff and Appellant,

v.

Gerald C. PERCIVAL and USF & G
Insurance Company, Defendants
and Appellees.

No. 960503.

Supreme Court of Utah.

July 10, 1998.

Rex C. Bush, Salt Lake City, for Plaintiff and Appellant.

George T. Naegle, Salt Lake City, for Defendants and Appellees.

STEWART, Justice:

Plaintiff Julie Jenkins appeals the trial court's denial of her motion to compel arbitration based on an oral agreement between her and USF & G to arbitrate her action for personal injuries against Gerald C. Percival. We reverse and remand.

Julie Jenkins and her two minor children were injured when a wheel came off defendant Gerald Percival's truck and struck the car the Jenkins were riding in. Jenkins, through counsel, undertook to settle her claim and the claims of her two minor children with Percival's insurance carrier, defendant USF & G Insurance Co. In a telephone conference on March 5, 1996, plaintiff's counsel settled the minors' claims against Gerald C. Percival with USF & G's insurance adjuster. Judge Timothy Hansen approved that settlement on March 21, 1996.

Jenkins contended in the trial court and now contends on appeal that as part of the March 5 settlement her counsel and USF & G's insurance adjuster agreed to arbitrate Jenkins' own claim against Percival. The purported agreement was oral, and Jenkins' counsel attempted to memorialize the arbitration agreement, and the settlement agree-

ments for the children in letters sent to the adjuster. Plaintiff contends that her counsel and the adjuster subsequently agreed as to which arbitrator and which arbitration service they would use to arbitrate plaintiff's claim. On May 23, 1996, just days after the trial court approved the settlement agreement and dismissed the children's claims, the adjuster revoked the alleged agreement to arbitrate. Plaintiff filed suit to compel arbitration. The district court held that because there was no written agreement calling for arbitration, arbitration could not be compelled.

■ Whether an arbitration agreement is enforceable is a question of law, and we review the trial court's determination for correctness. *See* Utah Code Ann. § 78–31a–4(1) (1996); *Docutel Olivetti v. Dick Brady Systems, Inc.*, 731 P.2d 475, 479 (Utah 1986).

## I.

Defendants contend that no enforceable agreement to arbitrate resulted from the March 5th telephone conversation. They argue that, irrespective of whether an oral agreement to arbitrate was reached, any such agreement is invalid as a matter of law. First, they contend that the USF & G insurance adjuster acting on behalf of Percival lacked legal authority to bind him to arbitration.

The insurance contract between Percival and USF & G imposed on USF & G a duty to negotiate a settlement of claims against it within the policy's coverage. Our case law acknowledges this contractual obligation and an implied covenant of good faith and fair dealing on the part of the insurance company that requires the company, among other things, to "fairly evaluate [each] claim" and

"act promptly and reasonably in rejecting or settling the claim." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985). The insurance company under such a contract must be given "a reasonable latitude of discretion to decide whether it will accept a proposed settlement." *Ammerman v. Farmers Ins. Exch.*, 19 Utah 2d 261, 266, 430 P.2d 576, 579 (1967). Rejecting a proposed settlement, of course, nearly always results in litigation of the claim.

■ The insurance adjuster, as an employee or expressly authorized agent of the insurance company, is charged with conducting settlement discussions and with deciding whether to settle or litigate a claim. As we stated long ago, the adjuster's "authority is prima facie coextensive with the business intrusted to him," which primarily is to adjust a claim of loss for the company's benefit. *Vadner v. Rozzelle*, 88 Utah 162, 169, 45 P.2d 561, 564 (1935); *see Couch on Insurance* § 48:63 (3d ed.1997). The adjuster's authority from the insurance company to make settlement decisions in this case cannot be challenged. The USF & G adjuster with whom plaintiff's counsel entered the purported arbitration agreement successfully settled the claims brought on behalf of Jenkins' two minor children against Percival.

■ If an insurance adjuster has authority from the insurance company to settle a claim, the adjuster also has authority to bind the insurance company to arbitrate the claim, as long as the plaintiff agrees and the insured is not prejudiced in any way. "Every person capable of disposing of property or of releasing a right may make a submission of a dispute concerning it to arbitrators." 4 Am.Jur.2d, Alternative Dispute Resolution, § 101 (1995).[1] An insurance

---

1. Defendants assert that an adjuster cannot submit a claim to arbitration because some jurisdictions question whether attorneys engaged in litigation have authority to bind a client to an arbitration agreement. See 48 A.L.R.4th 127 (1986) for a list of relevant cases. This argument is specious. Even assuming that attorneys lack power to bind clients to arbitration, a proposition which this court has rejected in the past and about which we express no new opinion (*see Bivans v. Utah Lake Land, Water & Power Co.*, 53 Utah 601, 174 P. 1126 (1918) (noting that an attorney in a pending case is held by many

decisions to have authority, by virtue of his or her general employment to conduct the case, to submit the matter to arbitration, because of the attorney's relation to party, court, and subject matter, and because arbitration is a recognized method of fair and lawful trial)), it does not follow that insurance adjusters also lack that authority. Unlike an attorney, the adjuster in this case is an employee of USF & G which has the express, contractual obligation to settle or otherwise adjust a claim. The scope of an attorney's representation of a client, by contrast, is

company is entitled to adjust a claim in the manner it chooses, as long as it fulfills its contractual duties and fairly evaluates the claim, acts promptly and reasonably, and defends the insured against undue liability. *See Beck,* 701 P.2d at 798, 801.

■ However, the insurer and its adjuster cannot bind the insured to arbitrate any claim against the insured for any amount in excess of the policy limits. To impose liability on an insured for an amount over the policy limit in an arbitration proceeding would violate the insured's right of access to the courts under article I, section 11.

■ Article I, Section 11 of the Utah Constitution guarantees that courts shall be open and that every injured person shall have remedy by due course of law. Even the most limited reading of this provision guarantees a day in court to all parties with potential liability in disputed insurance claims. *Cf. Jensen v. State Tax Comm'n,* 835 P.2d 965, 969 (Utah 1992). An insured not a party to an arbitration agreement would be deprived of this substantive right if bound by an arbitration award exceeding policy limits. To be sure, the insured can waive this right by expressly agreeing to the arbitration or by accepting the liability decided in an unconsented arbitration, but any such waiver must be voluntary, intelligent, and knowing. *See Lindon City v. Engineers Const. Co.,* 636 P.2d 1070, 1074 (Utah 1981).

■ The insurance contract between the insurance company and the insured does not authorize the adjuster to waive the individual rights of the insured. "The right to apply to the courts for relief for the perpetration of a wrong is a substantial right" and cannot be waived through contract except "in the most unequivocal terms." *Bracken v. Dahle,* 68 Utah 486, 499, 251 P. 16, 20 (1926). As a result, the adjuster cannot unilaterally bind the insured to arbitration.

In sum, an insurance adjuster may bind an insurance company to an agreement with a plaintiff in a tort case to arbitrate a claim, but the arbitration agreement is enforceable only against the insurance company and the

plaintiff in the tort action. The agreement cannot, however, bind the insured if the resulting award exposes the insured to liability in excess of the insurance policy limits, unless the insured waives his or her right of access to the courts by independently agreeing to the arbitration.

■ If, therefore, there is a binding arbitration agreement between USF & G and Jenkins it is enforceable between the parties to the agreement. If an award is made that is within the policy limits, the arbitration will dispose of Jenkins' claim against Percival because only the insurance company would be obligated to pay the award, and Percival's constitutional right would remain intact. But should the award expose Percival to liability, the agreement would not bind Percival. To recover damages in excess of Percival's policy limits, Jenkins would have to pursue Percival independently or obtain his accession to the arbitration award.

## II.

Defendants also argue that even if there was an agreement to arbitrate, it is not enforceable because it was not written. Utah Code Ann. § 78–31a–4 states that a court, "upon motion of any party showing the existence of *an arbitration agreement,* shall order the parties to arbitrate." Utah Code Ann. § 78–31a–4(1) (1996) (emphasis added). The directly preceding code section, titled "Arbitration agreement," states that "[a] *written* agreement to submit any existing or future controversy to arbitration is valid, enforceable, and irrevocable, except upon grounds existing at law or equity to set aside the agreement, or when fraud is alleged...." Utah Code Ann. § 78–31a–3 (1996) (emphasis added). Together, these sections form the backbone of the Utah Arbitration Act, which works to reverse entrenched common-law skepticism of arbitration agreements, and, as is well established, these sections must be construed in tandem so as to give full effect to the intended scope of the Act. *See Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984). "Separate parts of an

---

more limited. *See* Utah R. Prof. Cond. Rule 1.2(a) (1997) (stating that an attorney cannot

settle or dispose of a case without first consulting his or her client).

act should not be construed in isolation from the rest of the act." *Id.; see also State v. Hunt,* 906 P.2d 311, 312 (Utah 1995) ("[A]ny interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided." (quotation omitted)).

■ We hold that an arbitration agreement must be written to be enforceable under section 78–31a–4. Section 78–31a–3 provides that only "written agreement[s]" to submit a claim to arbitration are "valid, enforceable, and irrevocable." The logical extension of this language is that until an agreement to arbitrate is reduced to writing, it is invalid, unenforceable, and revocable. Hence, a party could not successfully show the existence of a satisfactory "arbitration agreement" under section 78–31a–4 if the purported agreement was oral. This reading comports with the common law, which viewed arbitration agreements as revocable until the arbitration award issued. 16 *Williston on Contracts* § 1918A (3d ed.1976). The language of section 78–31a–3 only reverses that presumption with regard to "written" agreements. *See Horne v. Horne,* 737 P.2d 244, 248 (Utah Ct.App.1987).

■ Furthermore, any ambiguity as to whether an agreement must be written is solved by reading section 78–31a–3, which speaks solely of "written" agreements, in terms of its title, "Arbitration agreement." *See also* Utah Arbitration Act, ch. 225, 1985 Utah Laws 615. A statute's title, though not part of the statute, may be considered if the language of the statute is ambiguous. *See Stephens v. Bonneville Travel,* 935 P.2d 518, 521–22 (Utah 1997). By employing the language "arbitration agreement" in both the title to section 78–31a–3 and the body of § 78–31a–4(1), the Legislature signaled a correlation between the two sections.[2] Thus, mandating "written agreement[s]" under section 78–31a–3 is tantamount to requiring a party to prove a written "arbitration agreement" under section 78–31a–4.

■ Finally, while the public policy of promoting speedy and inexpensive resolutions of controversies favor arbitration in some cases, *see Allred v. Educators Mutual Ins. Assoc.,* 909 P.2d 1263, 1265 (Utah 1996); *Chandler v. Blue Cross Blue Shield,* 833 P.2d 356, 358 (Utah 1992), these considerations cannot outweigh the constitutional right of access to the courts unless one waives that right. *See* Utah Const. art. I, §§ 7, 11. The Legislature no doubt sought to protect that right by requiring that the waiver be in writing so that the waiver would be clear and knowing. Moreover, policies supporting liberal enforcement of arbitration agreements inhere only once the arbitration agreement is established. *See Docutel Olivetti Corp. v. Dick Brady Systems, Inc.,* 731 P.2d at 479.

■ In this case, plaintiff and USF & G arguably agreed to submit plaintiff's claim to arbitration in an oral telephone conversation. Plaintiff contends that letters to the insurance adjuster confirming the agreement constitute a writing sufficient to memorialize the agreement and satisfy the statute's requirement of a written agreement. Correspondence between parties evidencing a meeting of the minds to submit a controversy to arbitration can qualify as a "writing." *See, e.g., Peterson v. Hendricks,* 524 P.2d 321, 321–22 (Utah 1974). The letters in this case, however, were unacknowledged by USF & G, and nothing in writing indicates the insurance company's assent to an arbitration agreement except the unilateral assertion of plaintiff's counsel. *Cf.* Utah Code Ann. § 25–5–4 (Supp.1997) (providing that writing memorializing a contract within the statute of frauds must be "signed by the party to be charged with the agreement"); *Guinand v. Walton,* 22 Utah 2d 196, 199–200, 450 P.2d 467, 469 (1969) (holding that a letter from the party to be charged satisfied statute of frauds). We agree with the district court, therefore, that no written agreement to arbitrate resulted from the telephone negotiations as required under Utah Code Ann. § 78–31a–4.

---

**2.** This correlation is made explicit in the sections of the Uniform Arbitration Act from which the Utah sections were derived. Section 2 of the Uniform Act, corresponding to Utah code section 78–31a–4, requires the party seeking arbitration to show "an agreement described in Section 1," the section corresponding to Utah code section 78–31a–3. 7 U.L.A. 109 (1997).

### III.

■ The conclusion that no written arbitration agreement existed does not end our inquiry. Rather, it prompts the further question whether an *oral* agreement, unenforceable under the Utah Arbitration Act, can nonetheless be enforced based on some other theory. Under the statute of frauds, an otherwise invalid agreement may be enforced through a court's equitable prerogatives if a party, relying on the oral agreement, partially performs its contractual obligations. *See Coleman v. Dillman,* 624 P.2d 713, 715 (Utah 1981); *Holmgren Bros. v. Ballard,* 534 P.2d 611, 614 (Utah 1975); *see also* Utah Code Ann. § 25–5–8 (1995); 71 Am.Jur.2d, Specific Performance, §§ 19, 20 (1973). Courts of equity fashioned the doctrine of part performance not to annul the statute of frauds but to prevent an overly rigid adherence to the statute from becoming the means of perpetrating a fraud. *See Coleman,* 624 P.2d at 715.

■ This same concern applies in context of arbitration agreements. Refusing to enforce an oral agreement to arbitrate, when evidenced by the parties' substantial acts in reliance on and in furtherance of an executory agreement, would contravene Utah's stated policy to "encourag[e] extrajudicial resolution of disputes [once] the parties have agreed not to litigate." *Docutel Olivetti,* 731 P.2d at 479. It would also permit parties who conscientiously entered an agreement, as evidenced by their actions, to escape the agreement's intended consequences. A court's equity powers are properly employed to prevent reinstating rights and privileges voluntarily contracted away simply because one party has come to regret the bargain made.

■ It is unclear from the sparse record in the case before us whether Jenkins and USF & G did, in fact, orally agree to submit Jenkins' claim to arbitration in the March 5th conversation as plaintiff claims. The trial court made no findings in this regard, concluding only that there was no enforceable *written* agreement. Furthermore, if an oral agreement to arbitrate existed, the record does not reveal whether that purported agreement constituted one facet of the larger settlement agreement, approved in part by the district court, that also disposed of the Jenkins children's claims. Both determinations are crucial in assessing whether the doctrine of part performance applies in this case. Part performance can only apply to arbitration agreements if (1) the oral contract and its terms are clear and definite, (2) the acts done in performing the contract are equally clear and definite, and (3) the acts are in substantial reliance on the oral contract. *See Martin v. Scholl,* 678 P.2d 274, 275 (Utah 1983); *Randall v. Tracy Collins Trust Co.,* 6 Utah 2d 18, 24, 305 P.2d 480, 484 (1956).

■ If there was an oral agreement to arbitrate that was part of an overall settlement agreement that included disposition of the Jenkins children's claims, plaintiff may be able to establish part performance of the comprehensive settlement agreement by the fact that she obtained judicial approval of those parts of the settlement relating to the minors' claims.[3] We caution, however, that for actions to constitute part performance, the steps taken in reliance on the arbitration agreement must be substantial, a criterion we cannot determine given the facts before us. As we have held with regard to the statute of frauds:

> The critical observation to make in [assessing] what constitutes sufficient part performance is that it must be proved by strong evidence. Whether phrased in "reliance" terminology where the evidentiary measurement is a substantial change in position or worded in "performance" language where the measurement is whether the acts appear to be a result of the contract, or whether they are explainable on another ground, the strong, acts-oriented evidentiary standard is constant.

*Martin,* 678 P.2d at 275; *see also* 2 Corbin on Contracts, § 425 (1950). Merely prepara-

---

**3.** Our review of the record does not indicate any other evidentiary basis for part performance in this case.

tory acts, such as plaintiff's contacting Intermountain ADR service and arranging for a particular arbitrator, do not constitute part performance. *See e.g., Baugh v. Logan City,* 27 Utah 2d 291, 294, 495 P.2d 814, 817 (1972).

For the foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

DURHAM, J., concurs in Justice STEWART's opinion.

ZIMMERMAN, Justice, concurring:

I concur in the general statement of the law in Justice Stewart's opinion and in the result, remanding the matter to the trial court for further exploration of whether the agreement to arbitrate was part of a larger agreement that was partially performed to settle all the claims of the Jenkins. However, I do not agree with the tone of the majority opinion insofar as it suggests that there is some extraordinary hurdle that plaintiffs must overcome before they can show that they are entitled either to rescission of the entire settlement agreement or to its specific enforcement. In my view, no extraordinary proof standards apply here, nor is or should the law be in any way hostile to the enforcement of oral arbitration agreements made as part of a larger oral contract. The days of the law's and the legal establishment's hostility to resolving disputes in any other forum should be long past. The legislature may have required a writing for an arbitration agreement to be enforceable standing alone, but that requirement in no way altered the general legal rules about oral agreements and executory contracts. The standards applicable here are the same as in any run of the mill oral contract case.

On the facts, it bears noting that the record regarding the parties' agreement is not quite so sparse as the majority opinion might lead one to believe. The only writing memorializing the agreement between the parties

concerning all the claims, including those of the children which were settled and approved by Judge Hanson, is the letter of March 5th. And that letter contains a statement of the terms of the children's settlement, terms upon which the claim was actually settled, and a statement that "we have agreed to arbitrate Julie Jenkins' claim." In addition, the insurance company, both before the trial court and before this court, did not seriously contend that the adjuster did not agree to arbitrate the mother's claim. Finally, there remains the fact that the insurance company did not try to disavow arbitration of the mother's claim until after Judge Hanson had actually settled and dismissed the children's claims that one can assume had some strong sympathetic potential in the event of a jury trial. On these facts, there is ample evidence from which a finder of fact could conclude that there was an agreement to arbitrate as part of the overall disposition of the family's claims.[1]

RUSSON, Justice, dissenting:

I respectfully dissent from the majority's conclusion that an oral agreement to arbitrate, though unenforceable under the Utah Arbitration Act, can nonetheless be enforced through some other legal theory such as the doctrine of part performance. Furthermore, I cannot agree with the majority that an insurance company can simply submit a third-party claim against its insured to arbitration.

This court has never before addressed the issue whether oral agreements to arbitrate are enforceable in Utah. At common law, oral arbitration agreements were enforceable. *See* Robert M. Rodman, *Commercial Arbitration* § 3.1, at 50 (1984). However, this court has held that "where a conflict arises between the common law and a statute or constitutional law, the common law must yield." *Hansen v. Utah State Retirement Bd.,* 652 P.2d 1332, 1337 (Utah 1982); *see also* Utah Code Ann. § 68–3–1 (adopting

---

1. I note Justice Russon's concerns about the insurance company binding an insured to arbitration without the insured's consent, with the potential of exposure beyond the policy limits. I do not view this case on its facts as addressing that question. Only if the arbitrated settlement exceeded the policy limits would the insured have occasion to be concerned about whether the insurer, in agreeing to arbitration, had acted inconsistent with its contractual obligations and rights.

common law of England "so far as it was not repugnant to, or in conflict with, the constitution or laws of ... this state"); 2B *Sutherland Statutory Construction,* § 50.01, at 89 (5th ed. 1992) ("In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law.").

In the case at bar, the statute and the common law are clearly in conflict. The Utah Arbitration Act provides that only "[a] *written* agreement to submit any existing or future controversy to arbitration is valid, enforceable, and irrevocable." Utah Code Ann. § 78–31a–3 (emphasis added). The majority correctly notes that "[t]he logical extension of this language is that until an agreement to arbitrate is reduced to writing, it is revocable, unenforceable, and invalid." However, the majority then concludes that while oral arbitration agreements are not enforceable under the Utah Arbitration Act, such agreements may be enforceable through "some other theory." The majority's conclusion directly contradicts our established rule mandating that the common law yield to the statute, and it renders the written requirement a complete nullity. Because only *written agreements* to arbitrate are enforceable under the Utah Arbitration Act, I would hold that oral arbitration agreements are unenforceable in Utah. Nevertheless, even if the common law applied, the alleged oral agreement in this case would be unenforceable because at common law an oral arbitration agreement may be revoked any time before the rendering of the award. *See* Maynard E. Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act,* 10 Vand. L.Rev. 685, 685 (1957); 1 Martin Domke, *Domke on Commercial Arbitration,* § 9:04, at 108 (Gabriel M. Wilner rev. ed.1997).

Other jurisdictions that have addressed the validity of oral arbitration agreements have reached a similar result. *See, e.g., Bennett v. Meader,* 208 Conn. 352, 545 A.2d 553, 555, 557 (1988) (holding oral arbitration agreements unenforceable because comprehensive statutory scheme regarding arbitration controlled arbitration where common law was inconsistent with statute); *Anderson v. Federated Mut. Ins. Co.,* 481 N.W.2d 48, 49

(Minn.1992) (holding oral arbitration agreement unenforceable, not because common law arbitration was "superseded" by arbitration act, but because oral agreement was revocable at common law before matter was submitted to arbitrator). Commentators have also noted the following effect of the statutory writing requirement: "The requirement that the arbitration clause be in writing in order that it may be considered enforceable is set forth in the United States Arbitration Act, the Uniform Arbitration Act and the statutes of most states. This provision renders invalid mere oral arbitration agreements." 1 Domke, *supra,* § 6.01, at 73; *see also* Rodman, *supra,* § 4.5, at 92 ("Except where the subject matter is such that a contract with reference thereto must be in writing, a common law arbitration agreement or submission may be oral. However, if there is a requirement to that effect, a statutory submission must be in writing."); Merton C. Bernstein, *Private Dispute Settlement: Cases and Materials on Arbitration,* 69 (1968).

Strict enforcement of the writing requirement is also supported by policy considerations. Arbitration is a final proceeding which excludes a court of law from resolving the dispute. By submitting a liability claim to arbitration, participants (1) give up their constitutional right to redress in the courts, (2) waive procedural safeguards, including the rules of evidence and the rules of civil procedure, and (3) severely limit their right of appeal. Thus, because arbitration strips participants of significant legal rights, an agreement to arbitrate should not be enforceable unless it is in writing. Moreover, as the *Bennett* court noted, the writing requirement eliminates the problems of proving an oral agreement, the content of which would have to be determined by a court, and this would not be as efficient as establishing the existence and content of a written agreement. *Bennett,* 545 A.2d at 558; *see also* Pirsig, *supra,* at 692 (at common law "[i]t was considered unwise to permit an irrevocable arbitration agreement to be left to the uncertainties of a claimed oral transaction").

Even if there is no conflict between the Utah Arbitration Act and the common law,

the majority errs in concluding that an oral arbitration agreement may be enforceable through the doctrine of part performance. The doctrine of part performance is an equitable remedy, based upon the prevention of fraud, which operates to take a parol contract out of the statute of frauds so as to render the contract enforceable. *See Martin v. Scholl,* 678 P.2d 274 (Utah 1983); *Young v. Moore,* 663 P.2d 78 (Utah 1983); *see also* 73 Am.Jur.2d *Statute of Frauds* §§ 403 & 405 (1974); 37 C.J.S. *Statute of Frauds* § 248 (1943). Under the doctrine, a party may secure specific performance of a contract, but "only where the circumstances of the case meet the general prerequisites to equitable relief.... The doctrine operates if, but only if, the remedy at law by a recovery of damages or otherwise is inadequate and the contract is one which if in writing would be enforceable in equity." 73 Am.Jur.2d *Statute of Frauds* § 401 (1974); *see also* 37 C.J.S. *Statute of Frauds* § 249 (1943).

This court has consistently followed the general rule that "[t]he right to an equitable remedy is an exceptional one, and absent statutory mandate, equitable relief should be granted only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice." *Thurston v. Box Elder County,* 892 P.2d 1034, 1040 (Utah 1995) (citing *South Shores Concession v. State,* 600 P.2d 550, 552 (Utah 1979); *Delivery Serv. & Transfer Co. v. Heiner Equip. & Supply Co.,* 635 P.2d 21, 21 (Utah 1981) (equitable remedy "normally only granted when damages may not accurately be ascertained or would not adequately compensate the plaintiff"); *Erisman v. Overman,* 11 Utah 2d 258, 262, 358 P.2d 85, 88 (1961) (where adequate legal remedy is available, "one may not seek equity")). This standard applies to the equitable remedy of specific performance. *See South Shores Concession, Inc. v. State,* 600 P.2d 550, 552 (Utah 1979) (" 'The right to specific performance is essentially an exceptional one, and a decree for such relief is given instead of damages only when by this means a court can do more perfect and complete justice. Ordinarily, to entitle one to specific performance of a contract, he must show that a recovery of damages for its breach will not be an adequate remedy. If the breach of an agreement can be compensated for in damages specific performance will be denied.' " (quoting *Halloran–Judge Trust Co. v. Heath,* 70 Utah 124, 141–42, 258 P. 342 (1927) (other citation omitted))).

As an initial matter, an oral agreement to arbitrate is not subject to the Utah Statute of Frauds, codified at Utah Code Ann. §§ 25–5–1 to –9. The majority has offered no rationale as to why the doctrine of part performance should be applied to an oral contract that was not under the statute of frauds to begin with. Moreover, "[i]t is a well-established rule that except where authorized to do so by statute, a court of equity will not decree specific performance of an agreement to decide a controversy by, or submit it to, arbitration." 71 Am.Jur.2d *Specific Performance* § 40 (1973); *see also* 81 C.J.S. *Specific Performance* § 86 (1977) ("In the absence of a statute providing otherwise, an agreement to submit a matter to arbitration ... ordinarily will not be specifically enforced, even if the contract contains a provision that the agreement to arbitrate disputes, claims, or questions should be specifically enforced.").[1] Cases applying the common law uniformly refused to specifically enforce an agreement to submit a claim to arbitration. The reasoning for this refusal was aptly stated by one judge in the following manner:

> So that we abundantly see, that the very impracticability of compelling the parties to name arbitrators, or upon their default, for the court to appoint them, constitutes, and must forever constitute, a complete bar to any attempt on the part of a court of equity to compel the specific performance of any agreement to refer to arbitration. It is essentially, in its very nature and character, an agreement which must rest in the good faith and honor of the parties, and like an agreement to paint a

---

1. The Utah Arbitration Act permits a court to specifically enforce an arbitration agreement. See Utah Code Ann. § 78–31a–4. However, as previously established in this dissent and as the majority opinion acknowledges, only written arbitration agreements are valid and enforceable under section 78–31a–3. It therefore follows that only written agreements may be specifically enforced under section 78–31a–4. Because the statute does not authorize specific enforcement of oral arbitration agreements, the general rule is still applicable.

picture, or to carve a statue, or to write a book, or to invent patterns for prints, must be left to the conscience of the parties, or to such remedy in damages for the breach thereof, as the law has provided.

*Tobey v. County of Bristol,* 23 F. Cas. 1313 (D.Mass.1845), *reprinted in* Bernstein, *supra,* at 29–31.

Applying the aforementioned rules, specific performance of an oral agreement to arbitrate clearly is not a proper remedy because equitable principles do not apply in this case. Assuming that an oral arbitration agreement existed, there is nothing to indicate that legal damages are inadequate or that equitable relief will "result in a more perfect and complete justice." USF & G's refusal to settle Jenkins' claim through arbitration has not prejudiced Jenkins in any way, except for the time and cost of preparing for arbitration.[2] The time for filing suit has not expired, and Jenkins may still file a lawsuit against Percival.[3] As Jenkins is in the exact same position she was in before settlement negotiations began, I disagree with the majority's conclusion that an equitable remedy may be applied in this case. I would therefore affirm the trial court and hold that oral arbitration agreements are unenforceable in Utah.

Finally, I disagree with the majority opinion that the insurance company had the legal authority to submit a claim made by a third party against its insured to arbitration. Jenkins' liability claim is against Percival, not against USF & G. USF & G is involved only because of its contract of insurance with Percival. Pursuant to the terms and conditions of the insurance contract, USF & G had a duty to pay all sums Percival "legally must pay as damages . . . to which this insurance applies," and it also had a duty "to defend any 'suit' asking for such damages." Furthermore, USF & G had the right to settle any claim or suit, but only because USF & G had the contractual authority to do so.

Settling a liability claim and submitting a liability claim to arbitration are two different concepts. The settling of a liability claim denotes certainty and finality of the claim against the insured. Such is not the case with arbitration. In the case at bar, Percival is not a party to the arbitration agreement in question, nor does his liability insurance policy give USF & G the authority to submit the claim against him to arbitration. If we were to hold otherwise, Percival, or any other insured, could have great personal exposure inasmuch as it is not uncommon for insurance liability policies to have limits of coverage less than the amount of damages claimed by the third party. If an insurance company could involuntarily submit its insured to arbitration, that insured would be subjected without his consent to the decision of the arbitrator regardless of the amount of award, and all done in derogation of the insured's constitutional and procedural rights. Moreover, if the amount of the arbitration award was above the policy limits of coverage, an insurance company would still have the obligation to defend its insured in an action to recover the amount in excess of the policy limits; however, the insurance company would be defending a suit in which none of its own money was at risk.

Therefore, I would hold that in order for an insurance company to submit a claim made by a third party against its insured to arbitration, its insured must agree in writing to be bound by the arbitration judgment or the third-party claimant must agree in writing that in the event the amount of the arbitration award exceeds the amount of the insured's policy limits of coverage, the claimant will accept as full and final settlement the amount of the policy limits and release the insured accordingly.

HOWE, C.J., concurs in Justice RUSSON's dissenting opinion.

---

2. "[C]ommon law revocability of any submission to arbitration was recognized but with liability for 'all the costs, expenses, and damages which (the opposing party) may have incurred in preparing for such arbitration.'" Pirsig, *supra,* at 689 (quoting N.Y.Rev.Stat. § 23 (1829)).

3. Jenkins was injured on September 24, 1994. The statute of limitations for filing a personal injury action is four years. *See* Utah Code Ann. § 78–12–25.