**INTERMOUNTAIN POWER AGENCY, Plaintiff and Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant and Appellee.**

**No. 960531.**

Supreme Court of Utah.

July 7, 1998.

Ronald L. Rencher, Mark Dykes, Salt Lake City, Michael F. McBride, Basil Cole, John G. DeGooyer, Charles A. Spitulnik, Alicia M. Serfaty, Washington, D.C., for Plaintiff and Appellant.

J. Clare Williams, Salt Lake City, James V. Dolan, Robert T. Opal, Omaha, NB, Ronald S. Flagg, R. Eden Martin, Theodore R. Posner, Washington, D.C., for Defendant and Appellee.

STEWART, Justice:

This appeal is from an order of the district court confirming an arbitration award. The appellant asserts that the district court erred in not finding, pursuant to Utah Code Ann. § 78–31a–14(1)(c), that the arbitrator had exceeded his powers. Pursuant to section 78–2–2(3)(j) of the Utah Code, we have appellate jurisdiction to review the trial court's order. We affirm the trial court's order confirming the arbitration award, and we remand this proceeding to the trial court to determine an award of attorney's fees and costs.

## I. BACKGROUND

Intermountain Power Agency ("IPA") and Union Pacific Railroad Company ("Union Pacific") entered into a Transportation Services Agreement (the "Agreement"), dated June 26, 1984. The Agreement provides for the rail transportation of coal between Provo, Utah, and IPA's power generating plant at Lynndyl, Utah.

Section 9(b) of the Agreement provides that rates for transportation services be adjusted semiannually over the Agreement's twenty-six year term by reference to a nationwide index known as the Rail Cost Adjustment Factor ("RCAF"), then published by the Interstate Commerce Commission ("ICC") pursuant to 49 U.S.C. § 10707a(a)(2)(B). Under section 20 of the Agreement, disputes concerning this rate adjustment provision must be submitted to binding arbitration.

In 1984, when the parties entered into the Agreement, the ICC published only one rail cost adjustment index with the name RCAF. That RCAF "reflected the impact of inflation on the prices paid by the railroad industry for the various inputs from which rail service is produced—labor, fuel, equipment and material." Ex Parte No. 290 (Sub–No.4), *Railroad Cost Recovery Procedures—Productivity Adjustment,* 5 I.C.C.2d 434, 434–35 (1989). During the same time, however, debates arose within the ICC about whether the RCAF should be expanded to include a

productivity adjustment in addition to the standard inflation-based adjustment. The parties knew of the ICC's productivity adjustment debates and negotiated whether their Agreement should include a rate adjustment provision reflecting changes in the productivity of Union Pacific. Union Pacific refused the inclusion of a productivity adjustment in the Agreement. Instead, the Agreement provides at section 9(b):

> In the event the ICC modifies its use of the [Association of American Railroad's] national forecasted charge-out index to determine the value of the RCAF, the parties shall be bound by such modification. In the event the ICC discontinues the use of such index, the parties agree to meet within 30 days of receiving notice of such discontinuance to attempt to agree upon an appropriate replacement index *or other suitable rate adjustment provision reflecting the intent of this Agreement.*

In March 1989, the ICC determined to publish both the traditional, inflation-based RCAF as it had in the past (the "RCAF (Unadjusted)") as well as an RCAF with an adjustment for a productivity factor based on nationwide industry averages, (the "RCAF (Adjusted)"). Every quarter since then both the RCAF (Unadjusted) and the RCAF (Adjusted) have been approved and published.[1] Union Pacific took the position that the RCAF (Unadjusted) should continue to govern the contract rate changes under the Agreement, while IPA contended that the RCAF (Adjusted) should control. As provided in section 20 of the Agreement, the parties submitted the dispute for binding arbitration.

At arbitration the parties argued the issue of whether the arbitrator should consider extrinsic evidence or base his decision solely on the language of the Agreement. The arbitrator ultimately concluded that the dispute could be resolved by looking solely to the language of the Agreement.[2] The arbitrator found that "the intent of the parties, determined objectively from the language by which they expressed their agreement, was to resort to a modified index only in the event the original index was no longer available." On June 30, 1996, the arbitrator issued an award in which he held that the RCAF (Unadjusted) applied to the parties' Agreement.

On August 5, 1996, IPA filed a motion in the district court, pursuant to Utah Code Ann. § 78–31a–14(1), to vacate the arbitration award, claiming that the arbitrator had exceeded his powers. Following the submission of briefs and after oral arguments, the district court denied IPA's motion to vacate since the "arbitrator did not exceed his powers, was not guilty of misconduct, and did not commit any other error which would serve as a basis to vacate the award as set forth in Utah Code Ann. § 78–31a–14(1)." The district court thus confirmed the arbitration award as required by statute. *See* Utah Code Ann. § 78–31a–12; *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 951 (Utah 1996) (citing 4 Am.Jur.2d *Alternative Dispute Resolution* § 229 (1995) ("The award [must] be confirmed by a court unless it is vacated, modified, or corrected . . . .")). IPA appeals.

## II. DISCUSSION

It is well established that the trial court's review of an arbitration award is not "pervasive in scope" and is "limited to the statutory grounds and procedures for review." *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1251 (Utah 1994); *see also Utility Trailer Sales, Inc. v. Fake*, 740 P.2d 1327,

---

1. The ICC Termination Act of 1995, Pub.L. 104–88, 109 Stat. 803, terminated the ICC, transferred certain functions of the ICC to the Surface Transportation Board, and abolished or recodified several provisions of the Interstate Commerce Act. Section 10707a(a)(2)(B)—the statutory provision expressly incorporated into the parties' Agreement—was recodified in similar language at 49 U.S.C. § 10708(a). Congress added § 10708(b), providing that the Board shall publish (1) a rail cost adjustment factor which takes into account changes in railroad productivity, and (2) a similar index that does not take into account changes in railroad productivity.

2. The arbitrator stated that his conclusion followed "from the language of the Agreement without reference to extrinsic evidence"; however, the arbitrator explained that the extrinsic evidence was in accord with his decision.

1329 (Utah 1987); *Robinson & Wells, P.C. v. Warren,* 669 P.2d 844, 846 (Utah 1983). Accordingly, the trial court should give considerable discretion to the arbitrator. *See Buzas Baseball,* 925 P.2d at 947. Whether the court agrees with the arbitrator's judgment is irrelevant, as long as the arbitrator construed and applied the contract in an arguably reasonable manner and acted fairly and within the scope of his authority. *See Buzas Baseball,* 925 P.2d at 947; *DeVore,* 884 P.2d at 1251, *Utility Trailer,* 740 P.2d at 1329; *Bivans v. Utah Lake, Land, Water & Power Co.,* 53 Utah 601, 174 P. 1126, 1130 (1918); *see also United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The court " 'do[es] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.' " *Buzas Baseball,* 925 P.2d at 948 (quoting *Misco,* 484 U.S. at 38, 108 S.Ct. 364). Were it otherwise, " 'the speedy resolution of grievances by private mechanisms would be greatly undermined.' " *Id.* (quoting *Misco,* 484 U.S. at 38, 108 S.Ct. 364). Consonant with the trial court's narrow scope of review, an appellate court's scope of review is limited to the legal issue of whether the trial court correctly exercised its authority in confirming, vacating, or modifying an arbitration award. *See DeVore,* 884 P.2d at 1251.

IPA asserts that the trial court in this case should have vacated the arbitration award because the arbitrator exceeded his powers by (1) failing to answer a question it posed for decision and (2) effectively modifying the Agreement by issuing an award in conflict with the Agreement's language. Utah Code Ann. § 78–31a–14(1) (1996) provides that when a party moves a trial court to vacate an arbitration award, "the court shall vacate the award if it appears: . . . (c) [that] the arbitrators exceeded their powers." We conclude that the arbitrator did not exceed his powers in resolving the dispute submitted to him by IPA and Union Pacific.

■ We have clearly held under the above statutory framework for vacating an arbitration award that an arbitrator exceeds his or her powers if the arbitrator strays beyond the scope of the questions submitted for arbitration by the parties. *See Buzas Baseball,* 925 P.2d at 949. The scope of the parties' dispute as defined in their written agreement to arbitrate establishes the scope of the arbitrator's authority in resolving the conflict. An arbitration award purporting to resolve questions beyond that jurisdictional boundary is not valid. For a court to find that an arbitrator has exceeded his or her delegated authority, the court must determine that "the arbitrator's award covers areas not contemplated by the submission agreement." *Id.* In addition, an arbitrator exceeds his or her delegated power if the arbitration award has no " 'foundation in reason or fact' " and is, therefore, " 'completely irrational.' " *Id.* at 950 (quoting *Brotherhood of R.R. Trainmen v. Central of Ga. Ry.,* 415 F.2d 403, 411–12 (5th Cir.1969); *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir. 1972)).

■ We first assess whether the arbitrator exceeded the jurisdictional grant of power from the parties as defined by the Agreement and by the issues submitted for resolution. IPA claims that since the Agreement states that the parties will be bound by modifications to the ICC's use of the RCAF, the arbitrator was required to explicitly determine whether the RCAF (Adjusted) represented a modification. IPA reasons that by failing to answer that question, the arbitrator exceeded his powers. We disagree.

The dispute between IPA and Union Pacific arose after the ICC began publishing two RCAF indices. Union Pacific continued to bill IPA in accordance with the RCAF (Unadjusted). Upon receipt of these invoices, IPA recalculated the amounts owing using the RCAF (Adjusted) and then remitted to Union Pacific amounts less than what had been invoiced. Thus, when distilled to its essence, the issue submitted to the arbitrator was whether under the Agreement the rates for transportation services should reflect the use of the RCAF (Unadjusted) or the RCAF (Adjusted). While IPA posed to the arbitrator other, more specific questions which it viewed as compelling and while these questions could properly have been used as intermediary mileposts to guide the

arbitrator's decision, the arbitrator did not transgress his jurisdiction by failing to address specifically each intermediary question. Irrefutably, the arbitrator had jurisdiction to resolve the ultimate matter on any of the reasonable grounds presented by the parties. In deciding whether to confirm or vacate the award, we will not assess the wisdom of any particular decisional basis.

Section 20 of the Agreement empowers the arbitrator to resolve rate disputes under section 9.[3] Section 9, in turn, provides that the rates charged for transportation will be adjusted semiannually "by an amount equal to the percentage increase or decrease in the Rail Cost Adjustment Factor (RCAF)...." The Agreement further provides that

> [i]n the event the ICC modifies its use of the AAR's national forecasted charge-out index to determine the value of the RCAF, the parties shall be bound by such modification. In the event the ICC discontinues the use of such index, the parties agree ... to attempt to agree upon an appropriate replacement index or other suitable rate adjustment provision reflecting the intent of this Agreement.

In passing on which RCAF governs under the contract, the arbitrator had jurisdiction to interpret section 9's language in a manner that permitted him to resolve the matter without specifically stating whether adoption of the RCAF (Adjusted) modified the original RCAF. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S.Ct. 364, *cited in Buzas Baseball*, 925 P.2d at 947–48. The arbitrator's award in this case does not "cover[ ] areas not contemplated by the submission agreement." *Buzas Baseball*, 925 P.2d at 949.

■ Moreover, the award in this case is not devoid of a factual or rational basis. The language of section 9 on which the arbitrator agreed to base his decision is susceptible of more than one interpretation, and it was not irrational for the arbitrator to interpret the language to mandate that the unadjusted RCAF should govern rate changes. The arbitrator concluded that the ICC and its successor have published since 1989 two alternative rate adjustment indices—the original RCAF and an RCAF adjusted for productivity factors, and that section 9 indicates the parties' contractual intent to preserve continuity in rate adjustment as long as possible. This interpretation of the Agreement's language, regardless of whether it may seem faulty to us, "cannot be said to be irrational or utterly lacking in evidentiary support," *id.* at 950, particularly since the Agreement does not appear to anticipate that the ICC would adopt two concurrent RCAF formulations.

The arbitrator found evidence to indicate that during the negotiation of the Agreement, IPA proposed that the rates be adjusted by an index which made allowances for productivity. When Union Pacific strongly opposed the proposal, IPA abandoned its demand for a productivity adjustment in order to reach an agreement. Hence, the arbitrator considered it unnecessary to answer specifically whether the ICC's publication of the adjusted RCAF was a modification of the ICC's use of the AAR's national index because he found that the subjective intent of the parties was that the rates be adjusted by an input index with no adjustment for productivity. While he explained that extrinsic evidence supported his finding, the arbitrator looked solely to the Agreement's language to deduce that intent and to determine that the parties had agreed to resort to a modified index only if the original index were no longer available. Since the RCAF referred to in the Agreement was still published, the arbitrator determined that the parties should continue to use the unadjusted RCAF index.

The arbitrator stayed within the scope of authority delegated to him, and he reasonably construed the language of the Agreement to resolve the dispute. Even though the arbitrator did not find it necessary to decide an intermediate issue deemed important by one of the parties, the arbitrator did

---

**3.** Section 20 further provides that the arbitrator's decision "shall be binding" and that each party "consents to the entry of judgment by any court having jurisdiction in the matter in accordance with the decision of the arbitration panel."

reach a conclusion on the ultimate issue. It was proper for the trial court to be highly deferential to the arbitrator's award. *See id.* at 946. The arbitrator's award had a foundation in reason and fact, and therefore the trial court did not err in holding that the arbitrator had not exceeded his powers.

■ This conclusion also disposes of IPA's second argument that the arbitrator exceeded his powers by issuing an award in conflict with the language of the Agreement and thereby modifying the Agreement. Section 20 of the Agreement delegates authority to the arbitrator to resolve disputes between the parties under section 9, but specifically prohibits the arbitrator from modifying any provision or obligation therein. IPA contends that by basing his award on the parties' intent rather than on the Agreement's language, the arbitrator in essence modified the Agreement and, thus, exceeded his powers.

We are not persuaded by IPA's argument. Indeed, as we have stated above, the arbitrator deduced the parties' contractual intent directly from the language of the Agreement. This is as it should be. By insinuating that the arbitrator somehow erred in considering this contractual intent, IPA misconstrues the arbitrator's delegated responsibility and our prior case law. We·have clearly held that "[i]n the interpretation of a contract, the parties' intentions are controlling," and "the parties' intentions should be determined from the words of the Agreement." *See Turner v. Hi–Country Homeowners Ass'n,* 910 P.2d 1223, 1225, 1226 (Utah 1996).

The arbitrator's conclusion in this case was not a modification of the Agreement; instead, it was a reasonable interpretation of the Agreement's language. The trial court was correct in not substituting its judgment for that of the arbitrator. *See Buzas Baseball,* 925 P.2d at 947; *Robinson & Wells,* 669 P.2d at 847; *Giannopulos v. Pappas,* 80 Utah 442, 15 P.2d 353, 356 (1932); *Bivans v. Utah Lake, Land, Water & Power Co.,* 53 Utah 601, 174 P. 1126, 1130 (1918). We hold that the trial court properly denied IPA's motion to vacate the arbitration award since the arbitrator had not exceeded his powers. We therefore affirm the trial court's order confirming the arbitration award.

■ We turn now to Union Pacific's request for an award of attorney's fees and costs for defending against this appeal. In determining whether attorney's fees and costs would be appropriate in this case, we look to the policies underlying Utah's Arbitration Act. *See Buzas Baseball,* 925 P.2d at 953. Utah's Arbitration Act "reflects a longstanding public policy favoring speedy and inexpensive methods of adjudicating disputes." *Allred v. Educators Mut. Ins. Ass'n,* 909 P.2d 1263, 1265 (Utah 1996); *see also DeVore,* 884 P.2d at 1251; *Utility Trailer,* 740 P.2d at 1329; *Robinson & Wells,* 669 P.2d at 846; *Giannopulos,* 80 Utah at 449, 15 P.2d at 356. "[O]ur policies favor the enforceability of arbitration awards and discourage relitigation of valid awards...." *Buzas Baseball,* 925 P.2d at 953. We conclude, pursuant to Utah Code Ann. § 78–31a–16, that Union Pacific is entitled to an award of reasonable attorney's fees and costs for this appeal.

In sum, we affirm the trial court's order confirming the arbitration award and remand to the trial court the determination of an award of reasonable attorney's fees and costs on this appeal.

DURHAM, Associate C.J., and ZIMMERMAN and RUSSON, JJ., concur in Justice STEWART'S opinion.

HOWE, C.J., concurs in the result.