2001 UT 36

**PACIFIC DEVELOPMENT, L.C.,**
**Plaintiff and Petitioner,**

v.

**Eric ORTON, dba Orton Excavation,**
**Defendant and Respondent.**

No. 990744.

Supreme Court of Utah.

April 24, 2001.

Scott L. Wiggins, Mark E. Arnold, Salt Lake City, for plaintiff.

Richard D. Bradford, Kim H. Buhler, Provo, for defendant.

On Certiorari to the Utah Court of Appeals

DURRANT, Justice:

¶ 1 We granted a writ of certiorari to review a court of appeals decision affirming the district court's confirmation of an arbitration award in favor of Orton Excavation. Orton served as a subcontractor on a real estate project developed by Pacific Development, L.C. A dispute arose over the amount Pacific owed Orton for work performed, and the parties entered into a written arbitration agreement that described the scope of their dispute by reference to a single plat of land. The arbitrator made rulings with respect to two plats of land upon which Orton had performed work. Orton sought confirmation of the award in the district court, and Pacific filed a motion to vacate or modify the award on the ground that the arbitrator had exceeded his authority by ruling on both plats and had manifestly disregarded legal authority pertaining to the covenant of good faith and fair dealing implicit in the contract. The district court confirmed the award, and Pacific appealed on the same grounds it had raised before the arbitrator and the district court. The court of appeals affirmed. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 In 1994, Pacific contracted with Orton to perform sewer, water, and storm drain work within a subdivision Pacific was developing. Orton worked on two plats within the subdivision, known as Plat B and Plat C. A dispute arose over the amount Pacific owed Orton for work Orton performed. Orton recorded a mechanics' lien against the project and sought to foreclose it. Litigation ensued. Eventually, Pacific and Orton executed a written agreement to arbitrate their dispute.[1] That agreement read in pertinent part as follows:

---

1. Apparently, the underlying contract between the parties required them to arbitrate disputes.

The parties agree to submit to arbitration all remaining issues arising out of the dispute over a Mechanics' Lien filed against Riderwood Village, Plats B & C.... [The parties] acknowledge that the issues relating to the above-referenced Plat B of Riderwood Village have been resolved, and that, therefore, the arbitration will focus on the remaining issues of the dispute, those which relate to Plat C, thereby resolving all remaining issues in the case.

The arbitration took place in 1997. Despite the language stating that only Plat C issues remained unresolved, both parties presented some evidence relating to Plat B. The arbitrator rendered an interim decision with respect to both Plat B and Plat C. Pacific moved for reconsideration, arguing that the arbitrator had exceeded his authority by deciding Plat B issues and by failing to apply the covenant of good faith and fair dealing in his Plat C decision. The arbitrator supplemented and clarified the reasoning supporting his decision but ultimately rejected Pacific's motion and issued a final arbitration award relating to both plats.

¶ 3 Orton sought confirmation of the arbitrator's award in the district court pursuant to Section 78–31a–12 of the Utah Code. Pacific responded by filing a motion to vacate or modify the award. Pacific argued that the arbitrator had exceeded his authority by including Plat B in the award. Pacific also argued that the arbitrator had manifestly disregarded the law by refusing to apply the doctrine of good faith and fair dealing to offset Orton's purportedly excessive use of fill material in its work on Plat C.

¶ 4 The district court rejected these arguments and confirmed the arbitrator's award. Pacific appealed, renewing the arguments it had presented to the district court. The court of appeals affirmed. *See Pacific Dev., L.C. v. Orton,* 1999 UT App 217, ¶ 20, 982 P.2d 94. With respect to Pacific's claim that the arbitrator exceeded the scope of his authority, the court of appeals reasoned that Pacific and Orton, by "their conduct and mutual consent, submitted Plat B issues for resolution, expanding the scope of the arbi-

trator's jurisdiction." *Id.* ¶ 12. The court of appeals also rejected Pacific's contention that the arbitrator had manifestly disregarded the law by refusing to apply an offset based on the doctrine of good faith and fair dealing. *See id.* ¶ 16.

## ANALYSIS

¶ 5 On certiorari, Pacific renews the arguments it presented unsuccessfully to the district court and the court of appeals. Specifically, Pacific maintains that (1) the arbitrator improperly ruled upon a dispute that had not been submitted to him in the written agreement, and (2) the arbitrator manifestly disregarded the law by refusing to apply an offset pursuant to the implied covenant of good faith and fair dealing. Orton requests attorney fees for being required to defend the award against Pacific's contentions.

¶ 6 Though we here review the court of appeals and not the district court, *see Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 4, 978 P.2d 460, we note—as a necessary reference for determining the correctness of the decision below—the very limited number of statutory bases upon which courts may reconsider the arbitrator's award. *See Buzas Baseball v. Salt Lake Trappers,* 925 P.2d 941, 946–47 (Utah 1996). "A trial court faced with a motion to vacate or modify an arbitration award is limited to determining whether any of the very limited grounds for modification or vacatur exist." *Id.* at 947. On appeal, the appellate court should " 'grant no deference to the district court's conclusions [of law] but review them for correctness.' " *Id.* at 948 (alteration in original) (quoting *DeVore v. IHC Hospitals, Inc.,* 884 P.2d 1246, 1251 (Utah 1994)). On certiorari, we likewise review the decision of the court of appeals for correctness, but further limit our review to the scope of the issues considered by the court of appeals. *See Wall,* 1999 UT 33, ¶ 4, 978 P.2d 460.

¶ 7 Orton brought its action for confirmation of the award in the district court pursuant to the Utah Arbitration Act. Section 78–31a–12 of that Act requires the court

---

This fact was mentioned in oral argument, although neither party has provided an addendum of the relevant contract provision nor cited to any portion of the record where it may be found.

to "confirm the award unless a motion is timely filed to vacate or modify the award." Pacific timely moved, under Section 78–31a–14(1), to modify or vacate the portion of the arbitrator's award pertaining to Plat B. Section 78–31a–14(1) in pertinent part provides: "Upon motion to the court by any party to the arbitration proceeding for vacation of the award, the court shall vacate the award if it appears: ... (c) the arbitrators exceeded their powers...."[2] Both of Pacific's arguments rely upon this ground as a basis for overturning the arbitrator's decision.[3] We address them in the order stated above.

### I. THE ARBITRATOR'S CONSIDERATION OF PLAT B ISSUES

¶ 8 The written arbitration agreement provided that "[the parties] acknowledge that the issues relating to the above-referenced Plat B of Riderwood Village have been resolved, and that, therefore, the arbitration will focus on the remaining issues of the dispute, those which relate to Plat C, thereby resolving all remaining issues in the case." In other words, payments for Plat B were

**2.** The full text of the provision reads as follows:

> Upon motion to the court by any party to the arbitration proceeding for vacation of the award, the court shall vacate the award if it appears: (a) the award was procured by corruption, fraud, or other undue means; (b) an arbitrator, appointed as neutral, showed partiality, or an arbitrator was guilty of misconduct that prejudiced the rights of any party; (c) the arbitrators exceeded their powers; (d) the arbitrators refused to postpone the hearing upon sufficient cause shown, refused to hear evidence material to the controversy, or otherwise conducted the hearing to the substantial prejudice of the rights of a party; or (e) there was no arbitration agreement between the parties to the arbitration proceeding.

Utah Code Ann. § 78–31a–14(1).

**3.** The contention that an arbitrator has manifestly disregarded the law is a judicially created doctrine derived from the statutory provision that an arbitrator's decision may be challenged if an arbitrator has exceeded his or her authority. *See Buzas Baseball,* 925 P.2d at 951. An arbitrator is bound to apply governing law and may not simply disregard it; hence, manifest disregard constitutes an abuse of the authority conferred upon the arbitrator by the parties. *See id.* Similar in nature is the claim, considered in other cases but not presented here, that an arbitrator's

not in dispute and, once the issues relating to Plat C had been resolved, all disputes would be at an end. The only reasonable interpretation of the agreement is that Plat B issues would not be submitted for resolution by the arbitrator.

¶ 9 We have previously held that only written arbitration agreements are enforceable under the Act. *See Jenkins v. Percival,* 962 P.2d 796, 799–800 (Utah 1998).[4] Further, the written agreement defines the scope of the arbitrator's authority. "An arbitration award purporting to resolve questions beyond [the] jurisdictional boundary [of the agreement] is not valid. For a court to find that an arbitrator has exceeded his or her delegated authority, the court must determine that 'the arbitrator's award covers areas not contemplated by the submission agreement.'" *Intermountain Power v. Union Pacific R.R.,* 961 P.2d 320, 323 (Utah 1998) (quoting *Buzas Baseball,* 925 P.2d at 949). As noted above, the arbitration agreement in this case limited the arbitrator's authority to issuing an award for the Plat C dispute and also specifically precluded an award for the Plat B dispute. The arbitrator

decision lacks any basis in reason or fact and is therefore "completely irrational." *See id.* at 950; *Intermountain Power v. Union Pacific R.R.,* 961 P.2d 320, 323 (Utah 1998). While both arguments presented in this case turn on whether the arbitrator exceeded his authority, we will employ the shorthand term "manifest disregard" to refer to Pacific's argument relating to good faith and fair dealing.

**4.** The result in *Jenkins* was somewhat complex. Justice Stewart's lead opinion stated that although an oral agreement could not be enforced under the Act, equity might nonetheless provide a separate ground for enforcement. *See* 962 P.2d at 801–02. Justice Zimmerman concurred separately, stating that the law should not be "hostile to the enforcement of oral arbitration agreements made as part of a larger oral contract." *See id.* at 802. Nonetheless, a majority of the members of the court clearly held that only written agreements were enforceable under the Act. *See id.* at 799–800 (Stewart, J., joined by Durham, J.); *id.* at 803 (Russon, J., joined by Howe, C.J., dissenting from result allowing potential enforcement of oral agreement to arbitrate at equity, but concurring in holding that written agreement is required under the Act). The dispute in *Jenkins* over equitable enforcement is not implicated in this case, as Orton argues only pursuant to the Arbitration Act.

nevertheless issued an award for both plats. Therefore, the arbitrator exceeded his delegated authority unless the agreement was modified to allow an award for Plat B.

¶ 10 Both parties agree that evidence relating to Plat B issues was presented to the arbitrator, and Pacific concedes that it presented some evidence in its own case in chief. However, Pacific maintains that it presented evidence relating to Plat B for the sole purpose of establishing a course of dealing relevant to Pacific's arguments concerning its Plat C evidence. Orton responds that Pacific opened the door to Plat B issues and that Pacific's own evidence made clear that Plat B issues were in dispute. Orton thus contends that the parties' course of conduct at the arbitration hearing invited and necessitated a modification in the scope of that hearing. Neither party alleges an express agreement to modify the hearing, either orally or in writing. The issue we must resolve, then, is the level of proof necessary to demonstrate a mutual decision by the parties to modify the scope of the arbitration originally established by a formal written agreement to arbitrate. The court of appeals held that the initial written agreement could be modified by implication, that is, by the conduct of the parties in presenting evidence relating to a dispute outside the scope of the initial agreement. *See Orton*, 1999 UT App 217, ¶¶ 12–13, 982 P.2d 94. We disagree.

¶ 11 Notwithstanding the fact that an arbitration agreement is, in its essence, a contract between the parties, it is governed by a statute that imposes requirements not found in ordinary common law contracts. As prior cases make clear, arbitration agreements, unlike ordinary contracts, must be contained in a written document setting forth the scope of the dispute to be arbitrated. *See Percival*, 962 P.2d at 799–800 (holding agreement must be in writing to be enforceable under the Act); *Intermountain Power*, 961 P.2d at 323 (holding arbitrator's authority limited by scope of arbitration agreement); *Buzas Baseball*, 925 P.2d at 949 (same). This requirement at once enhances predictability and seeks to ensure that the parties are deliberately waiving their substantial rights to judicial review. It also seeks to

relieve the parties and the judiciary of the burden of revisiting disputes that have been submitted to binding arbitration.

¶ 12 In this regard, we have frequently stated that the goal of the Act is to encourage extra-judicial settlement of legal disputes. As observed in *Buzas Baseball*, "the Utah Arbitration Act 'reflects longstanding public policy favoring speedy and inexpensive methods of adjudicating disputes.'" 925 P.2d at 946 (quoting *Allred v. Educators Mut. Ins. Ass'n*, 909 P.2d 1263, 1265 (Utah 1996)); *see also Intermountain Power*, 961 P.2d at 323. That policy, however, would not be furthered by a doctrine that simply seeks to affirm the maximum possible number of arbitration awards. Parties contemplating arbitration must be assured that the arbitration will proceed according to established standards that both sides deem to be fair and just. To the extent rules that govern arbitration can be rendered more clear and less susceptible to contested interpretation, the policy of promoting arbitration will be advanced because there will be fewer opportunities to contest an arbitrator's award at the district court or the appellate level. A policy that refuses to overturn an arbitration award that has clearly departed from governing standards established at the outset will, in the long run, simply discourage other prospective litigants from submitting their disputes to binding arbitration. Furthermore, we have held that no formal record of arbitration proceedings may properly be considered by any court. In *Buzas Baseball*, we held that "the trial court and [appellate courts] must rely solely upon the arbitration award itself and the memorandum of agreement which binds the parties and limits the scope of issues to be determined by the arbitration." 925 P.2d at 946 n. 2. Accordingly, the rules governing the arbitration proceeding must be sufficient in themselves to provide the evidence necessary for a court to either confirm, modify, or vacate an arbitrator's award pursuant to the statute.

¶ 13 The scope of the arbitration is a governing standard that is fundamental to the expectations of the parties to the arbitration. The parties must know the boundaries

of the subject matter of the dispute submitted and the potential liabilities flowing therefrom before they are able to intelligently waive their rights to submit their disputes to formal litigation. And because the authority of the arbitrator derives from the arbitration agreement itself, *see Buzas Baseball*, 925 P.2d at 949, it follows that the scope of an agreement to arbitrate cannot be modified except by proper concurrence of the parties to the arbitration.

¶ 14 The court of appeals concluded that a written arbitration agreement may be implicitly modified merely by the parties' actions in bringing evidence of matters outside the scope of the agreement. We disagree. The decision of the court of appeals is contrary to the statutory criteria governing arbitration and to our decisions construing those criteria. Where the statute and our case law have held that arbitration agreements must be in writing, the preference for an explicit expression of the intent of the parties regarding the scope of arbitration is well-established. To allow modification of an express written agreement by less than a similarly explicit intent would simply circumvent the statutory requirements and the policies they vindicate. In this case, no express written agreement to modify the scope of the arbitration has been alleged, let alone proven. We therefore reverse and hold that the arbitrator exceeded the authority granted to him when he issued an award for Plat B.

## II. PACIFIC'S CONTENTION THAT THE ARBITRATOR'S AWARD DEMONSTRATED A MANIFEST DISREGARD FOR APPLICABLE LAW

¶ 15 Pacific also asserts that the arbitrator manifestly disregarded the law by refusing to apply an offset pursuant to the implied covenant of good faith and fair dealing in its contract with Orton. The contract provided for unit price billing for fill materials. Pacific claims that Orton violated the covenant of good faith and fair dealing by using too much fill material in its work on Plat C, and that the arbitrator manifestly disregarded the law pertaining to this covenant. However, the arbitrator's decision explicitly addressed the covenant of good faith and fair dealing and found that Pacific had failed to meet its burden of proof in showing that Orton had manifested bad faith in its use of fill materials. The court of appeals treated Pacific's argument by stating as follows:

> We believe ... that Pacific's manifest disregard argument simply amounts to a "manifest disagreement" with the arbitrator's findings and final award. The arbitrator specifically recognized the implied duty of good faith and fair dealing, but concluded that Pacific had not met its burden of proving Orton wasted material. Without a factual basis for Pacific's allegation, the arbitrator found no support for Pacific's argument that Orton had breached its implied duty of good faith. Thus, we conclude the arbitrator did not manifestly disregard the law.

*Orton*, 1999 UT App 217, ¶ 16, 982 P.2d 94.

¶ 16 We agree. A party is not entitled to review of the correctness of an arbitrator's legal reasoning. " '[M]anifest disregard' is much more than mere error as to the law." *Buzas Baseball*, 925 P.2d at 951. We therefore affirm the court of appeals on this issue.

## CONCLUSION

¶ 17 We reverse the court of appeals' holding that the scope of the arbitration agreement was modified to include Plat B issues. The Plat B dispute was beyond the scope of the arbitration as set forth in the written agreement, and the parties executed no written modification of that agreement. We affirm the court of appeals' holding affirming the district court's confirmation of the arbitrator's award as to the Plat C dispute. Pacific's claim that the arbitrator manifestly disregarded the law is merely an attempt to obtain review of the arbitrator's factual findings on that issue. We remand for modification of the arbitrator's award in a manner consistent with this opinion. As to Orton's claim for attorney fees, on remand, the district court has discretion to award Orton attorney fees for defense of its action at all court levels, but only with respect to Orton's

defense of the portion of the award pertaining to Plat C. *See* Utah Code Ann. § 78–31a–16; *Buzas Baseball,* 925 P.2d at 953–54.

¶ 18 Chief Justice Howe, Associate Chief Justice Russon, Justice Durham, and Judge Halliday concur in Justice Durrant's opinion.

¶ 19 Having disqualified himself, Justice Wilkins does not participate herein; District Judge Bruce K. Halliday sat.