**2013 UT App 141**

## THE UTAH COURT OF APPEALS

CREATERRA, INC.,
Plaintiff and Appellant,
*v.*
SUNDIAL, LC,
Defendant and Appellee.

Opinion
No. 20120049-CA
Filed June 6, 2013

Third District, Salt Lake Department
The Honorable John Paul Kennedy
No. 110902743

Matthew R. Kober, Attorney for Appellant
Clay W. Stucki, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which
JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.

ROTH, Judge:

¶1      Createrra, Inc. appeals from the district court's decision to deny Createrra's motion to vacate an arbitration award in favor of Sundial, LC, on the basis that Createrra's motion to vacate was untimely when it was filed more than ninety days after Createrra had received notice of the award.[1] Createrra asserts that its motion to vacate was not untimely because the arbitrator's decisions had

---

1. Based on its determination that Createrra's motion was untimely, the district court entered an order denying Createrra's motion to vacate, granting Sundial's cross-motion to dismiss, and summarily confirming the arbitration award. *See* Utah Code Ann. § 78B-11-124(4) (LexisNexis 2012) ("If the court denies a motion to vacate an award, it shall confirm the award . . . .").

not been served in accordance with the notice requirements of the parties' operating agreement. Createrra also contends that the court wrongly concluded that the parties had orally modified the notice provision of the operating agreement. We affirm.

BACKGROUND

¶2    Createrra and Sundial are members of Jordan Village Development, LLC (the LLC), an entity they formed to develop property in Midvale, Utah. In the course of forming the LLC, the parties executed an operating agreement, in which they agreed to serve in writing "any notice, election, or communication" required by the agreement, with delivery either by hand or through certified mail with courtesy copies via email. The agreement required that any disputes arising out of the operating agreement be resolved through arbitration.

¶3    Disputes soon arose, and from late 2009 through much of 2010, Createrra and Sundial engaged in a series of arbitrations. The first arbitration was held in fall 2009, and the arbitrator issued a written decision, in which he noted that "[a]t the conclusion of the hearing, the parties agreed to service of the arbitration decision via email." Createrra did not challenge the accuracy of this statement, nor did it register any objection to the arbitrator's delivery of his decision by email. The parties arbitrated two subsequent disputes. The arbitrator issued a decision on the second arbitration in December 2009. Because he believed that the parties had agreed to electronic service, the arbitrator delivered the decision only via email. Createrra did not object to the electronic delivery of the arbitrator's second decision. On October 19, 2010, the arbitrator issued a final arbitration decision ordering dissolution of the LLC. This decision was also served only by email. It is undisputed that both parties received the email, and Createrra again voiced no objection to the use of email for this purpose. The notice of award was never served in accordance with the notice provision of the parties' operating agreement. A supplemental arbitration decision,

which included an award to Sundial of $52,731 in attorney fees, was issued on November 3, 2010.[2] It too was emailed to the parties. Again, Createrra made no objection to the method of service.

¶4    On February 2, 2011, ninety-one days after the arbitrator issued the supplemental decision on November 3, 2010, Createrra moved to vacate the arbitration decisions.[3] Sundial filed a motion to dismiss, asserting that Createrra's motion was untimely because it had not been filed within ninety days of Createrra's receipt of notice of the award. *See* Utah Code Ann. § 78B-11-124(2) (LexisNexis 2012) (allowing a party to file a motion to vacate an arbitration award so long as the motion is "filed within 90 days

---

2. The arbitrator actually issued the supplemental arbitration decision on October 28, 2010, but allowed Createrra an opportunity to object to the amount of attorney fees awarded. When Createrra did not timely respond, the arbitrator, on November 3, "affirmed" its October 28 decision and deemed the "arbitration concluded." The precise date of the "final" decision does not affect our analysis, and for purposes of appeal, we accept that the "arbitration concluded" on November 3, 2010.

3. Createrra's pleadings treat all three arbitration awards as being eligible for vacatur both because the first two decisions were referenced in the final decision, which Createrra interprets as indicating neither was final until November 2010, and because Createrra takes the position that it has yet to receive notice of any of the decisions in accordance with the notice provision of the operating agreement. The first two arbitration decisions, however, simply "provide[d] guidance and input regarding the ongoing relationship between Createrra and Sundial" and did not involve the exchange of any assets or liabilities or result in the payment of damages. The final arbitration resulted in an order that the parties dissolve the LLC and that Createrra pay Sundial $52,731 in attorney fees. It is that decision that prompted Createrra to move to vacate the awards.

after the movant receives notice of the award").[4] Createrra opposed dismissal, asserting that the "[n]otice required . . . to start the 90-day [motion] filing requirement has not yet been effectuated" because notice had been delivered only by email and therefore not in accordance with the notice provision of the operating agreement.

¶5    At a hearing on Sundial's motion to dismiss, the district court observed that the first arbitration award indicated that the parties had orally agreed to electronic service by email rather than strict compliance with the notice provision of the operating agreement. When Createrra denied any such agreement, the court asked if it had ever objected to the arbitrator's statement. Createrra contended that it had but only identified occasions where it had objected to the substance of the award, not the method of service. Ultimately, the district court agreed to hold an evidentiary hearing at which it would hear from each side about what, if any, agreement occurred at the first arbitration and how the arbitration decisions were subsequently transmitted. Following that hearing, the district court found that "the Parties verbally agreed to accept notice relating to the October 15, 2009 arbitration [decision] by email" and that Createrra's acceptance of subsequent award notices by email without objection established a pattern of conduct that precluded it from now demanding strict compliance with the notice provision of the operating agreement. The court concluded that, as a result, the emailed notice fulfilled the statutory requirement that triggered the ninety-day period for filing a motion to vacate. *See id.* § 78B-11-120(1) ("The arbitrator . . . shall give notice of the award, including a copy of the award, to each party to the arbitration proceeding."); *id.* § 78B-11-103(1)–(2) ("[A] person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course . . . . A person has notice if the person has knowledge of the notice or has received notice."); *id.* § 78B-11-124(2) (stating that the ninety-

---

4. The statute has not been amended since the parties entered into the operating agreement in October 2008.

day period for filing a motion to vacate runs from receipt of notice of the award). The district court therefore granted Sundial's motion to dismiss on the basis that Createrra's motion to vacate was untimely, denied the motion to vacate, and summarily confirmed the arbitration awards. *See Allred v. Educators Mut. Ins. Assoc. of Utah*, 909 P.2d 1263, 1266–67 (Utah 1996) ("[F]ailure to timely file a motion to either modify or vacate the award forecloses a comprehensive review on the merits of the arbitration process."). Createrra now appeals from the district court's decision in favor of Sundial.

## ISSUE AND STANDARDS OF REVIEW

¶6      Createrra contends that the district court should not have denied its motion to vacate the arbitration award. "'[T]here is no special standard governing [an appellate court's] review of a district court's decision' to confirm, vacate, or modify an arbitration award." *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 948 (Utah 1996) (alterations in original) (emphasis omitted) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995)). Thus, on appeal, "we review the district court's factual findings under a clearly erroneous standard" but do not give any deference to the district court's conclusions of law, instead reviewing them for correctness. *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

¶7      For purposes of appeal, we accept Createrra's position that the operating agreement required that notice of an arbitration award be served either by hand delivery or by certified mail with

email copies to both the party and its attorney.[5] Sundial asserts that "[t]he district court made a factual finding that Createrra agreed to receive arbitration awards via email" and that Createrra has not challenged that finding on appeal. Sundial contends that, as a result, even if notice of the arbitration award was required to be hand delivered or sent via certified mail and email under the operating agreement, Createrra orally modified that requirement when it verbally assented to receipt of the arbitration award through email. Createrra counters that its verbal agreement to accept notice by email was void because arbitration agreements cannot be orally modified. Thus, the crux of the inquiry on appeal is whether a term in an arbitration agreement governing how notice is to be served is subject to oral modification.

¶8     Arbitration agreements are creatures of contract. *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 10, 40 P.3d 599. It is well established in Utah, however, that arbitration agreements are governed by statute and that to be enforceable, "arbitration agreements, unlike ordinary contracts, must be contained in a written document setting forth the scope of the dispute to be arbitrated." *Pacific Dev., LC v. Orton*, 2001 UT 36, ¶ 11, 23 P.3d 1035; *see also* Utah Code Ann. § 78B-11-107(1) (explaining that to be "valid, enforceable, and irrevocable," an arbitration "agreement

---

5. The operating agreement contains a provision that requires that "any notice, election, or communication required or permitted to be given by any provision of this Operating Agreement" be served personally or via certified mail and email. Because the parties' agreement to arbitrate is contained within the operating agreement, it is ostensibly governed by this notice provision, as Createrra asserts. Sundial, however, has raised a question about whether the notice provision only governs "any notice, election, or communication required or permitted to be given" by the parties to each other and not by a third person, who is not a party to the operating agreement, such as the arbitrator. We need not resolve this dispute.

[must be] contained in a record" from which its scope can be ascertained); *Buckner v. Kennard*, 2004 UT 78, ¶ 18, 99 P.3d 842 ("[T]he arbitrator must not exceed the scope defined in the parties' written agreement."). The Utah Supreme Court has observed that requiring written documentation of the arbitration agreement's scope "enhances predictability and seeks to ensure that the parties are deliberately waiving their substantial rights to judicial review." *Pacific Dev.*, 2001 UT 36, ¶ 11. "It also seeks to relieve the parties and the judiciary of the burden of revisiting disputes that have been submitted to binding arbitration." *Id.*

¶9    Createrra argues that any modification to an arbitration agreement must also be in writing. In support of its position, Createrra cites to *Pacific Development v. Horton*, 2001 UT 36, 23 P.3d 1035, particularly its statement that "[t]o allow modification of an express written agreement by less than a similarly explicit intent would simply circumvent the statutory requirements and the policies they vindicate." *Id.* ¶ 14. Sundial counters that *Pacific Development* requires written modification only when the parties are amending the scope of an arbitration agreement and does not extend the requirement of a writing to changes to a procedural aspect of an arbitration agreement, such as the method of giving notice. Accordingly, we begin our analysis with an examination of the supreme court's ruling in *Pacific Development*.

¶10    Pacific Development had subcontracted for Orton to perform certain work on two plats it was developing (Plats B and C). *Id.* ¶ 2. After disputes arose, the parties entered into negotiations that culminated in a written agreement to arbitrate, which provided that issues relating to Plat B had been resolved and that "arbitration will focus on the remaining issues of the dispute, those which relate to Plat C." *Id.* (internal quotation marks omitted). Despite this limitation on the scope of arbitration, at the hearing, both parties presented evidence regarding Plat B as well as Plat C and the arbitrator entered a decision in favor of Orton with respect to both plats. *Id.* ¶¶ 1–2. Pacific Development filed a motion to vacate the award, arguing that the arbitrator had

exceeded his authority under the arbitration agreement when he made an order regarding Plat B. *Id.* ¶ 3. The supreme court agreed. *Id.* ¶¶ 8–14. It held that a written agreement defining the scope of arbitration could not be "implicitly modified merely by the parties' actions in bringing evidence of matters outside the [agreed-upon] scope of the agreement" because the requirement that arbitration agreements be in writing demands "an explicit expression of the intent of the parties regarding the scope of arbitration." *Id.* ¶ 14. In this context, the court then stated, "To allow modification of an express written agreement by less than a similarly explicit intent would simply circumvent the statutory requirements and the policies they vindicate." *Id.*

¶11    *Pacific Development*, therefore, focuses on modification of the scope of an arbitration agreement and does not address the question raised here: whether a change to a notice procedure specified in an arbitration agreement must be made in writing. And because Createrra depends entirely on the language of *Pacific Development*, it provides us with no authority for extending the written modification requirement to the method for giving notice. Nor do we see any reason to do so.

¶12    The requirement that the scope of an arbitration agreement, including any modifications thereof, be in writing is a deviation from a widely-accepted principle of contract law. Ordinarily, "'[p]arties to a written contract are free to modify that contract by oral or verbal agreement.'" *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 13 n.4, 40 P.3d 1119 (quoting a jury instruction that the supreme court concluded "accords with Utah law"). This is true, "notwithstanding recitals in a prior contract restricting changes or modification in its terms." *Prince v. R.C. Tolman Constr. Co.*, 610 P.2d 1267, 1269 (Utah 1980); *see also* 2 *Corbin on Contracts* § 7.14 at 404 (1995) ("Apart from statute, the common law rule is that [e]ven where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol negotiation." (alteration in original) (citation and internal quotation marks omitted)). Rather, it is the parties'

intentions, not the form of the modification, that controls. *See Central Fla. Invs.*, 2002 UT 3, ¶ 12. In other words, an oral modification to a contract may be enforceable so long as the modification reflects the parties' intent.

¶13 The legislature, however, deemed it appropriate to except arbitration agreements from the general rule because an agreement to arbitrate deprives a party of many of the protections of the judicial process. Arbitration is considered a "speedy and inexpensive method[] of adjudicating disputes," compared to the traditional legal process, because it resolves disputes outside of the court system with little opportunity for judicial review. *Pacific Dev., LC v. Orton*, 2001 UT 36, ¶ 12, 23 P.3d 1035 (citation and internal quotation marks omitted). And because arbitration's benefits come at a significant cost, the legislature has provided that the parties' core understanding must be written out to ensure that the extent of their commitment to arbitration is clearly defined so that the parties and the court are informed of what disputes are the subject of binding arbitration and to make clear "that the parties are deliberately waiving their substantial rights to judicial review" of those issues. *Id.* ¶ 11. The same concerns do not seem to arise, however, with respect to the modification of a notice procedure where the arbitration act itself requires no more than that notice be provided "in ordinary course," a concept the act describes in practical, rather than technical, terms. *See* Utah Code Ann. § 78B-11-103(1) (LexisNexis 2012) ("[A] person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, whether or not the other person acquires knowledge of the notice."); *id.* § 78B-11-103(2) ("A person has notice if the person has knowledge of the notice or has received notice."); *id.* § 78B-11-103(3) ("A person receives notice when it comes to the person's attention or the notice is delivered at the person's place of residence or place of business, or at another location held out by the person as a place of delivery of such

communications.").[6] There seems to be no reason, therefore, why the notice provisions of an arbitration agreement should not be governed by the ordinary principles applicable to modifications of written contracts, that is, "[p]arties to a written contract are free to modify that contract by oral or verbal agreement," *R.T. Nielson Co.*, 2002 UT 11, ¶ 13 n.4 (internal quotation marks omitted).

¶14    Further, the terms of the operating agreement itself do not preclude the parties from modifying it. To the contrary, the operating agreement expressly contemplates its revision, defining the term "Operating Agreement" to "mean this Operating Agreement *as amended* from time to time." (Emphasis added.) There is neither a provision requiring that modifications be in writing, nor an integration clause. Furthermore, the parties' conduct does not, contrary to Createrra's contention, mandate that modifications to the operating agreement be written. Createrra claims that the parties agreed to confine any contract modifications to writing when Createrra sent an email to Sundial and its counsel on February 18, 2010, advising that in order to "mitigate future misunderstandings," it was putting them "on notice that any agreement, waiver, or any other modification of the . . . arbitration agreement or arbitration proceeding . . . will . . . be done only in writing and signed by Createrra." This statement, however, amounts to no more than an attempt to unilaterally impose a requirement not otherwise part of the operating agreement. To the extent the statement may be evidence of Createrra's own intent to abjure future oral modification of the arbitration procedure, that intent was belied by Createrra's continued acceptance, without objection, of the emailed arbitration decisions in accordance with its earlier oral agreement. Indeed, the district court viewed the February 2010 email as "not disputing the statement in the [first

---

6. Createrra has not contested the district court's determination that email notification satisfies these statutory requirements for notice in an arbitration proceeding.

arbitration] award that the parties are agreeing to service of the decision by e-mail."

## CONCLUSION

¶15    Utah law does not require that a modification to the provisions of an arbitration agreement governing the method of service be in writing, and Createrra has not disputed the district court's findings both that Createrra agreed to an oral modification to the parties' operating agreement that allowed the arbitrator to issue his decisions by email and that Createrra then accepted service of the arbitrator's decisions by email without objection. Because there is no dispute that Createrra received the arbitrator's last emailed decision by November 3, 2010, the motion to vacate filed ninety-one days later, on February 2, 2011, was untimely. We therefore affirm the district court's decision.

———